## JACKSON v. CLAY.

### Opinion delivered March 8, 1909.

1. PARENT AND CHILD—CUSTODY OF INFANT.—While the custody of an infant is generally awarded to the father, as being its natural pro-

tector, the courts are not bound to deliver the infant into the custody of the father or of any other person, but will investigate all the circumstances and act according to sound discretion as the welfare of the child appears to require. *Coulter* v. *Sypert,* 78 Ark. 193, followed. (Page 503.)

2. SAME—DUTY TO CONSIDER CHILD'S WISHES.—Where the testimony shows that a divorced wife is in position to take care of a twelve-year-old boy, and the boy testifies that his father treats him unkindly, and that he would prefer to stay with his mother, the court will respect the child's wishes and leave him with his mother. (Page 504.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Marshall & Coffman,* for appellant. ·

The welfare of the child is of paramount importance in cases of this kind. While at common law the father is usually preferred, his right is primary and not absolute, and the mother will be given preference where her custody appears most beneficial to the child. 78 Ark. 193; 28 Cyc. 1590. Where the child has reached sufficient age to exercise discretion, his preference will be given much weight. 28 Cyc. 1596. Misconduct, cruelty to the child, immorality and habitual drunkenness on the part of either parent justifies the court in awarding custody to the other. *Id.* 1598-9. Unless the parent has obtained custody of the child through fraud, force or strategy, or necessity clearly demands it, the courts will not exercise the discretion to change the custody as between separated and contending parents. *Id.* 1600.

*Robertson & DeMers,* for appellee.

This is not so much a contest between the father and mother for the custody of the child as between the father and the stepfather and maternal uncles. As to strangers, the father is preferred by the law, and likewise he is preferred to the mother except where the child is a female, or a male child of very tender age. 37 Ark. 27; 32 Ark. 92; 64 Ark. 521; 19 Mont. 149; 50 Fla. 522; 34 Ala. 516. Occasional intoxication which does not interfere with the father's business is not in itself sufficient to deprive him of the custody of his children. 34/Ala. 516. In estimating the weight to be given to the preference of the child, the question must be considered whether or not he has arrived of sufficient age and mental discretion to estimate his needs and his obligations and duties, present and future, and whether or not

he is free from adverse influences in the expression of his choice. The circumstances do not justify the conclusion that the child's expressed preference in this case was free from undue influence. 53 L. R. A. 786; 51 L. R. A. 848. The child has come to the age where a father's oversight and control are more necessary than a mother's. 64 Ark. 521.

HART, J. This is a contest between father and mother for the custody of their son, Charlie, who was about 12½ years of age at the date of the trial.

When he was born, his mother became seriously ill, and for 30 days was not expected to live. She was confined to her bed for over two months. She was unable to do anything scarcely for two or three years, according to the testimony of herself and of her mother. In any event, soon after his birth, Charlie was placed in the custody of his paternal grandparents, and remained with them until his grandmother's death, which occurred in his sixth year. His parents separated when he was 7 or 8 months old, and his father went to the Indian Territory to live. Afterwards his mother obtained a divorce. When his grandmother died, his father returned to Arkansas to live, and took him into his custody. His father in a short time afterwards married again. Charlie lived with his father and stepmother for something over two years until their separation. He then went to live with his mother, and has lived with her most of the time for the past four years, making occasional visits to his father. In the meantime, his father secured a divorce from his second wife and has remarried. His mother also married J. W. Jackson about four months before the present action was instituted.

Habeas corpus proceedings were instituted in the Pulaski Chancery Court by R. E. Clay, the father, against Hallie Jackson, the mother, to obtain the custody of the child. The chancellor awarded the custody of the infant to his father, and his mother has duly prosecuted an appeal to this court. The determination of a contest involving the custody of infant children must necessarily depend to a large extent upon the evidence in each case. However, it may be well to notice the general principles which control in such cases.

The opinion in the case of *Coulter* v. *Sypert,* 78 Ark. 193, contains an extended and instructive discussion of the principles

governing the custody of infants. The court said that the father has no proprietary right or interest in .or to the custody of his infant child, and held that "while the custody of an infant is generally awarded to the father, as being its natural protector, the courts are not bound to deliver the infant into the custody of the father or of any other person, but will investigate all the circumstances, and act according to sound discertion as the welfare of the child appears to require." From the reasoning of the court it will be seen that the right of the father to the custody of his infant child is not an absolute right given to him because he is the father, but it is rather a qualified right to be exercised for the benefit of the infant, and has arisen from the presumption of the law that the welfare of the child as a general rule is best promoted by having the care of his natural protector.

In the case of *Lipsey* v. *Battle,* 80 Ark. 287, the court held that "in awarding the custody of infants the courts not only respect the rights and feelings of the parents, but also when the child is of sufficient age they give consideration to his wishes."

In the case of *Wofford* v. *Clark,* 82 Ark. 461, the contest was between the father and grandmother of the child. Under the facts of that case, the court was of the opinion that the custody should be awarded to the father, but the principles above announced were expressly recognized.

In the present case the testimony adduced by the mother shows that, by reason of her long-continued illness, she was unable to give the child a mother's care after its birth, and was on this account compelled to acquiesce in the child being taken from her and placed in the care of his paternal grandmother. Her testimony shows that her husband gave her but little care and attention during her illness, and in seven or eight months after the birth of their child abandoned her while she was yet unable to care for herself. The testimony in her behalf also shows that Clay is a man who constantly drinks, and that his course of conduct toward the child has been harsh and unfeeling. She shows that she has land of her own, and is well able to take care of the child, and that her present husband also has property of his own and is able and willing to help her take care of him. She says that for the past four years she has sent the boy to school, and has for the most part supported him. On the other hand, the

father claims that he has always been kind and indulgent toward the child; that while he lived in another State he came back to visit his boy and contributed largely to his support while he lived with his grandparents, and later while he lived with his mother. He denied the habitual use of intoxicants, and said that Charlie always expressed himself as satisfied with his treatment and as content to live with him. He also states that, while he owns no land, he has plenty of stock, and makes a good living.

At the time of the trial, Charlie was twelve years and five months old, and was a witness in the case. His testimony shows him to be a bright and intelligent boy. He unhesitatingly said that his father was unkind to him. He said that his father was in the habit of drinking, and that he had on one occasion kicked him while he was sick. That he had on different occasions severely whipped him without cause. He expressed a positive desire to live with his mother, and said that his life with her was happier, and his treatment there far better, than when with his father. The unfortunate circumstance of the separation of his father and mother has placed the child in a situation in life where he has lived separately with each of his parents. This fact has perhaps made a decided impression upon his mind, and has caused him to make a comparison of their conduct toward him. Be that as it may, his testimony shows that he is capable of understanding his situation in life, and his testimony, which appears to have been given freely and without suggestions or prompting from any one, shows a decided preference on his part to live with his mother.

The rights of the respective parents, the welfare of the child and his preference, viewed in the light of his mental development, are to be considered together in determining the question of custody, and, when so considered under all the facts and circumstances developed by the proof, we are led to the conclusion that the custody of the child should be awarded to the mother.

The decree of the chancery court is therefore reversed, and the cause remanded with directions to place the custody of the infant in the mother, with the usual directions concerning the right of visitation of the father.