## JACKSON v. JACKSON.

### Opinion delivered December 5, 1921.

DIVORCE—CUSTODY OF CHILD.—An order in a decree of divorce awarding the custody of a child to one of its parents is a final order and cannot be changed without proof showing a change in circumstances from those which existed at the time the original order was made.

Appeal from Ouachita Chancery Court; *J. Y. Stevens*, Chancellor; reversed.

*Powell & Smead,* for appellant.

The court erred in awarding the custody of the child to plaintiff, without first taking proof showing justification for the change. 124 Ark. 579; 146 Ark. 362.

*Thos. W. Hardy,* for appellee.

The decree of the chancery court was not final. The chancery court has the right and power to control the custody of a minor child in a contest brought before it. 37 Ark. 30; 106 Ark. 203. The court may also order a change of custody for good cause. 118 Ark. 582; 123 Ark. 242; 124 Ark. 579; 146 Ark. 366; 106 Ark. 203.

The father, unless incompetent and unfit, is the natural guardian and entitled to the custody of his minor child. 32 Ark. 96; 95 Ark. 358; 37 Ark. 30.

Where the evidence is sufficient, the findings of a · chancellor will not be disturbed. 95 Ark. 482; 73 Ark. 489; 90 Ark. 166. Where the evidence is conflicting, his findings will not be set aside, unless clearly contrary to the weight of evidence. 84 Ark. 429; 85 Ark. 83; 98 Ark. 287.

HUMPHREYS, J. This is an appeal from a decree of the Ouachita Chancery Court transferring the custody of Thurman Jackson from appellant, in whom the custody of the child was placed in a divorce proceeding on September 18, 1919, to appellee. The decree of date September 18, 1919, awarding the custody of the child to appellant was rendered in an action brought by appellant against appellee for a divorce and custody of the child, to which appellant filed an answer and cross-bill for divorce. In that case the court dismissed the bill and cross-bill for want of equity, and awarded the custody of the child to appellant until the further orders of the court, with the privilege to appellee of seeing and visiting the child at all reasonable times and hours, on which visits appellee and appellant were ordered to deport themselves in a proper manner and to say or do nothing which would cause the child to think less of either parent.

Appellee's petition, filed on the 7th day of April, 1920, for a change or transfer of the custody of the child from appellant to him contained allegations for divorce, which appellee, on motion, was permitted to withdraw. The remaining allegations were, in substance, to the effect that appellee was better able and situated to take care of and educate the child than appellant. The answer filed by appellant controverted this allegation in the petition.

The cause was submitted to the court upon the pleadings and testimony, which resulted in a decree awarding the custody and control of the child to appellee, with the direction that it should visit and stay with appellant from the 1st day of June until the 1st

day of September and from the 20th day of December to the 31st day of December each year.

There is no conflict in the testimony of the witnesses. The record reveals that appellee and appellant separated on the 12th day of June, 1918; that the mother retained the custody of and supported the child; that the father never visited the child until December, 1919; that the father filed suit for divorce and custody of the child, to which the mother filed an answer and cross-bill; that the suit was heard and dismissed by the court in September, 1919; that at the time a decree was rendered awarding the custody of the child to the mother until further orders of the court, which contained directions and orders as heretofore set out; that after the order was made the mother and child resided with Jeff Wells, her brother-in-law, as a member of his family. Mr. and Mrs. Wells were and are willing for her and her child to live with them. While residing there, her two brothers assisted her. The two brothers, R. L. Shirey and George Shirey, also were and are willing for appellant and her child to make their home with them and to support her and the child. R. L. Shirey lives at Louann, where he is postmaster and engaged in the mercantile business. At the time of the trial appellant was residing with her brother, George Shirey, about seven miles from Camden, and about three miles from a consolidated school which furnishes a conveyance to take the children back and forth to school.

After the separation appellant taught music for a livelihood and did the sewing for herself and child. From her earnings she had been able to support and maintain herself and child. She has at all times kept the child with her and administered to his needs personally. During the time she was residing with Mr. and Mrs. Wells, appellee visited the child three times, the first time in December, 1919, again in January, 1921, and again in June, 1921. He took a friend with him on each occasion for the purpose of using him as

a witness in case it became necessary. On the first visit appellee offered the child a toy gun, which appellant handed back to him, saying that she had supported the child up to that time without his help and she did not care for it then. Their conversation indicated that both were angry.

On the second visit the father found the child in the kitchen with the mother and offered him a nickel if he would come to him. The mother said, "Don't give him a nickel. You have never given him anything to help support him, and I don't feel like taking a nickel this late day." They repaired to the sitting room, where the father took the child and held him in his lap. He called the child "son," which caused the mother to say, "Charlie, if I had talked about a woman like you have about me, I would not be sure that Thurman was my son." Mr. Wells advised her not to talk that way, and no further conversation was indulged in between them.

On the third visit, in June, 1921, the father was unable to see the child because he ran away from him.

During the trial of the cause, at the noon recess, the child refused to go to the father, and fought at him as well as his grandmother Jackson when they tried to take him and kiss him.

Appellant attempted to explain her conduct toward appellee on the occasions of his visits on the ground that he had traduced her character, and on that account she held him in contempt; that at the time she did not understand the decree prevented her from saying and doing what she did; that, after consulting her attorney, she concluded that she had done wrong and was then willing for the father to visit the child and to render such assistance as he desired in maintaining and supporting him.

During the time intervening between the first and second suits appellee worked for a time in Red River bottom, then in Camden, then in St. Joseph, Mo., then in Camden, then in Thornton, then in Zenoria, La., and then in Thornton again.

At the time the court heard the motion for a transfer of the custody of the child appellee was strong, healthy, bore a good character, had a permanent position at a sawmill which yielded him $100 per month, and had a home with his sister at Thornton, Arkansas, where the child could be cared for by himself and his sister and sent to a good school within two blocks. He also had the privilege of taking the child and leaving it with his father and mother at Camden, where the child could and would receive proper attention and instruction and enjoy the best of educational advantages.

Appellant insists that the court erred in awarding the custody and control of the child to the appellee. This court ruled, in the case of *Weatherford* v. *Taylor,* 124 Ark. 579, that an order depriving a parent of the custody of a child for any length of time was a final order from which an appeal might be prosecuted, and that an order awarding the custody of a child to one of the parents could not be changed without proof showing a change in circumstances from those which existed at the time the original order was made. Referring to the original order made in that case, the court said: "The original decree constituted a final adjudication that appellant, and not appellee, was the proper one to have the child, and before an order can be made changing the status there must be proof on the subject justifying the change." The rule was reannounced in the recent case of *Nelson* v. *Nelson,* 146 Ark. 362.

Since the rendition of the original decree in the instant case, the Legislature has, by act, changed the rule that the father, unless incompetent or unfit, is the natural guardian of his minor children and entitled to have their custody and the care of their education. Section 3 of the act 257 of the Acts of Arkansas of 1921 reads as follows: "Where the husband and wife are living apart, there may be an adjudication of the court as to their power, rights and duties with respect to the persons and property of their unmarried minor chil-

dren. In such cases there shall be no preference between the husband and wife, but the welfare of the child must be considered first in determining the custody of such child, or the control of its property. Pending such adjudication the court may award the custody of the child and the control of its property to the father, or the mother, as may be to the best interest of all concerned, regarding the interest of the child as of the first importance.''

It is specifically provided in that act that in awarding the custody of a child no preference shall be made between the husband and wife, but the welfare of the child must be considered first in determining the custody of such child.

The rule of law governing the custody of children as between father and mother was more favorable to the father when the original decree was rendered than when the court heard the petition to change the custody of the child. There was no change in the ability of the parties to care and provide for the child. Neither had a home of his own to which he could take the child, but was dependent upon the generosity of relatives who kindly opened their homes to them. The father's earning capacity was ample to maintain and educate his child; likewise the mother's. A strong attachment existed between the child and mother, but not between the child and father. The mother's conduct had tended to alienate the affection of the child from the father, but she agreed to change her conduct in this respect and teach the child to love and respect the father, saying that her conduct theretofore was due to the fact that she felt a contempt for the father on account of charges he had made against her; that, at the time she said and did things calculated to alienate the affection of the child, she did not understand the decree prohibited her from doing so. The father cannot be held blameless, however, for the lack of affection existing between him and his child. He showed little interest in it after the separation. He did not visit the child for eighteen

months after the separation, and, although the original decree permitted him to visit it at all reasonable times, he only visited it three times in as many years. During the entire separation he never contributed anything towards its support. It is true the child was two years older, but at the time the court heard the petition for the change in custody it was still of tender age, and, on that account, needed the special care and attention of the mother which had been so willingly bestowed upon it in the past.

A change of custody was not necessary in order to prevent the mother from alienating the affections of the child from the father. This might have been done by admonishing the mother, if coupled with a real desire on the part of the father to regain the lost affection of his child. The mother offered to change her attitude toward the father, so far as the child was concerned, and an opportunity should have been given her to teach the child to honor and respect the father. The father, having been delinquent in manifestation of interest in the child, should have been admonished to assist the mother in this regard by frequently visiting the child and contributing a reasonable amount towards its support.

We do not think the evidence revealed any material change in the condition of the parties subsequent to the first decree, or that the proof showed a justification for the change of the custody of the child. The decree is therefore reversed, and the petition for the change of the custody of the child is dismissed.