STONE *v.* CROFTON.

Opinion delivered December 18, 1922.

DIVORCE—CUSTODY OF CHILD.—Where, on a divorce of his parents, the custody of a boy of four years was awarded to his grandfather, and six years later the mother applied for his custody, in view of the grandfather's advanced age and the ability of the mother to furnish better school facilities, an order transferring the child to the mother's custody will not be disturbed.

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*J. G. Sain* and *D. Ben Sain,* for appellants.

The father is generally to be preferred as custodian of a child. 37 Ark. 27; 117 Ark. 90; 95 Ark. 355; 89 Ark. 501. The evidence does not justify a change of custodian. 78 Ark. 193.

*W. P. Feazel,* for appellee.

The welfare of the child is of controlling importance. 50 Ark. 318; 78 Ark. 193; 102 Ark. 93; 106 Ark. 197.

HUMPHREYS, J. Appellee instituted suit against W. C. Stone, in the Howard Chancery Court, to obtain the permanent custody of her son, who was about ten years of age. D. R. Stone, the father of the boy, intervened, and by proper pleadings issue was joined as to which of the three, D. R. Stone, the father, W. C. Stone, the grandfather, or appellee, the mother, was entitled to his custody.

Appellee and her husband, D. R. Stone, were divorced in 1917, and the custody of their boy, then four years of age, was awarded to W. C. Stone. At that time W. C. Stone owned and resided upon 320 acres of land in Black Land Township. He owned considerable property, and was able and willing to care for and educate his grandson. His immediate family consisted of himself and wife. After obtaining the custody of his grandson he and his wife maintained and supported him as became their station in life. The neighborhood in which they lived afforded both school and church facilities. The schools, private and public, were taught about six months during the year. The boy attended regularly, and had advanced to the third grade when this suit was commenced. W. C. Stone is now 73 years of age and his wife 50. He still owns and resides upon his home place, and is able to and desirous of supporting and educating his grandson.

D. R. Stone regarded the home of W. C. Stone as headquarters, but resided elsewhere most of the time. Subsequent to the separation and divorce he rented land at various places and lived alone. He did his own house-

keeping. He had a small amount of personal property when the separation occurred, and accumulated very little afterwards. Appellee remarried. She and her husband, Wren Crofton, reside in Mineral Springs, Arkansas. They have no children, own a home, and are able and willing to care for, support, and educate appellee's son. The church and school facilities in Mineral Springs are good. Schools are taught there nine months in the year.

All parties to this suit are moral, upright citizens.

The record reflects that appellee visited the child on an average of three times a year. Her excuse for not visiting him oftener was that she was made to feel unwelcome in the home of W. C. Stone. She was unable to recall any particular act of inhospitality on the part of the grandparents. She testified that she was not permitted, when visiting them, to converse privately with her son. Her statement in this regard was unchallenged. W. C. Stone testified, however, that he extended every courtesy to appellee on the occasion of her visits.

The cause was submitted to the court upon the pleadings and testimony thus summarized, which resulted in the decree for appellee, for the reason that it was to the best interest of the child to be under the care and protection of his mother. The father and grandfather have prosecuted an appeal to this court.

Appellant, D. R. Stone, insists that the decree should be reversed and the custody of the child awarded to him upon the ground that the father is the natural protector and guardian of his children. In support of the contention that the father is preferred over the mother or other blood relations with reference to the custody of his children, the following cases are cited: *Verser* v. *Ford,* 37 Ark. 27; *Baker* v. *Durham,* 95 Ark. 355; *Jackson* v. *Clay,* 89 Ark. 501; *Andrews* v. *Andrews,* 117 Ark. 90. These cases do lay down the rule that the father will generally be preferred if, under all the circumstances of the particular case, the best interest of the children will be subserved by awarding their custody to him. The rule

announced in these cases, however, has been changed by
statute in this State, in contests between parents for the
custody of their children. Sec. 3 of act 257, Acts 1921
of the General Assembly, is as follows:

"Where the husband and wife are living apart, there
may be an adjudication of the court as to their power,
rights and duties with respect to the persons and prop-
erty of their unmarried minor children. In such cases
there should be no preference between the husband and
the wife, but the welfare of the child must be considered
first in determining the custody of such child, or the con-
trol of its property.   * * *  " According to the testi-
mony, the mother is in much better condition to care for
and educate the child than the father. The chancellor
was correct in awarding the boy to appellee in prefer-
ence to D. R. Stone.

Appellant, W. C. Stone, contends that the court erred
in preferring appellee over him. While the law prefers
the mother over grandparents in reference to the custody
of children, there are facts and circumstances in this
case which militate against appellee. She has shown lit-
tle interest in her child, and has permitted the grandpar-
ents to expend their means and time upon him for five
years. Strong ties of affection have been permitted to
grow up between the child and his grandparents. If the
apparent neglect of the mother and the ties of affection
existing between the child and grandparents were the
only things to be considered, the equities would greatly
preponderate in favor of the kind, generous grandpar-
ents. There are other things reflected by the record,
which, no doubt, appealed very strongly to the chancellor.
The school facilities were much better with the mother
than the grandparents. The grandfather had passed his
three score and ten, and, in the natural order of things,
must live on borrowed time in order to be the protector
and adviser of the boy during his adolescent age and
young manhood. If the child had been permitted to re-
main with the grandparents he would grow up without
either the father's impress or the mother's personal

touch, the most wholesome and telling influences in a life. The mother's seemingly dormant affection had revived and betokened good for the child. With these things in mind, and regarding the interest of the child of first importance, we are unable to say that the decree of the chancellor was erroneous.

The decree is affirmed.

Justices HART and SMITH concurring.