## PATTERSON *v.* COOPER.

### Opinion delivered March 3, 1924.

1. PARENT AND CHILD—SUFFICIENCY OF EVIDENCE.—In a contest between divorced parents over the custody of a child, the preponderance of the evidence *held* to sustain a decree for the mother.

2. PARENT AND CHILD—CUSTODY OF CHILD—FORMER DECREE OF DIVORCE. —In a contest between divorced parents for the custody of a child, the decree of divorce awarding the child to its mother will be assumed to be correct where it was never appealed from or modified.

3. PARENT AND CHILD—CHILD'S PREFERENCE AS TO CUSTODY.—In a contest between divorced parents over the custody of a fourteen-year old daughter, the child's preference, while not controlling, cannot be ignored, since, under Crawford & Moses' Dig., § 4897, she could select her own guardian if she had no parents.

Appeal from Pope Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*E. A. Williams,* for appellant.

*Robert Bailey,* for appellee.

The child's welfare is the paramount issue. In habeas corpus proceedings, in determining the right to the custody of a child the court will consult the inclination of the child, if it is of sufficiently mature age to judge for itself, and consider the child's feeling, affections and probable contentment in the future. 89 Ark. 501; 117 S. W. 546; 148 Ark. 164; 229 S. W. 15. Where the evidence is conflicting the findings of the chancellor will not be disturbed. 81 Ark. 609; 99 S. W. 106; 86 Ark. 622; 111 S. W. 269; 129 Ark. 197; 195 S. W. 22; 129 Ark. 301; 195 S. W. 674; 129 Ark. 583; 195 S. W. 358; 132 Ark. 180; 200 S. W. 805. Where the evidence is conflicting, the Supreme Court will not reverse unless there is an erroneous application of the law. 134 Ark. 211; 203 S. W. 269; 139 Ark. 542; 214 S. W. 68; 144 Ark. 642; 217 S. W. 473; 142 Ark. 609; 219 S. W. 742; 145 Ark. 248; 224 S. W. 486; 148 Ark. 295; 230 S. W. 260.

SMITH, J. This case presents a contest between the father and mother of Fay Patterson, a fourteen-year-old girl, over her custody. The court awarded the custody of the child to the mother, and the father has appealed. Testimony was offered tending to support the right of each parent to the child's custody, and we can only decide whether the decree of the court awarding the custody to the mother was, according to the preponderance of the testimony, for the child's best interest.

Appellant and appellee were married in 1904, and lived together as husband and wife until 1914, during which time two children were born to their union, both girls, one named Thelma, who is now sixteen, and Fay, the younger, who is now fourteen years old.

In November, 1914, the wife brought suit for divorce, and a decree was granted her, and she was also awarded custody of both children.

In November, 1917, the father married a second wife, and he and this wife are both anxious to have the child live with them. The testimony shows that they are suitable persons to have the custody and control of the child.

In December, 1917, the mother married a man named Cooper, with whom she is now living, and they are both anxious to have the custody of the child. Mr. Cooper testified that he was a brickmason, and that he earned $9 a day when he worked, and that his average wage was $40 per week, and that his wife was desirous of having the children, and that he would care for them properly if their custody was awarded to her.

After Mrs. Cooper's second marriage, she and her husband lived in several different cities, as Mr. Cooper found it necessary to do to secure employment, but they are now permanently located in New Orleans, and are conveniently located near churches and a good school, to which they propose to send the girl.

In 1918, while the war was going on, Mr. Cooper, who was then living in Nashville, Tennessee, and was within draft age, anticipated that he would be drafted, but he was later sent to Charleston, South Carolina, where he was employed on a government job, and Mrs. Cooper bought tickets for the children to Morrilton, Arkansas, where their father lived when she last heard from him. She provided the children with the necessities for the journey and gave them fifty cents in money, which they spent before arriving in Little Rock. The testimony on the part of the father is to the effect that the children were only provided with tickets to Little Rock, and that, when they arrived there, they had no tickets covering the remainder of the journey, and had no money to buy tickets with, and were only enabled to proceed on their journey through the charity of sympathetic persons to whom their plight was made known. The father was not advised that the children were on their way, and he was not looking for them, and, when the children arrived at Morrilton, they learned that their father had

removed to Atkins, Arkansas, but the children were well known in Morrilton, and readily secured the necessary aid to finish their journey. Upon arriving at their father's home they found him sick in bed. This was, of course, a thoughtless thing for the mother to do, but she testified that the children had tickets when they were put on the train to Morrilton, where she supposed the children would find their father, and that the children must have lost the portion of their tickets which would have carried them from Little Rock to Morrilton, and that it was her intention to have the children remain with their father until the status of her husband was fixed, and that, as soon as he became permanently located and it was known that he would not have to go to war, she commenced writing letters to the children. She testified that she wrote at least fifty letters to the children, none of which were ever returned or answered, and the testimony tends to show that these letters were intercepted by Mr. Patterson, and were never delivered to the children. Finally she sent a registered letter, which contained enough money to pay the expense of the children's return to her, but this letter was returned, with a notation made by the postmaster that its delivery had been forbidden by Mr. Patterson. Thereupon Mrs. Patterson brought this suit.

The child Fay testified, and it appears that the older one expressed her preference to live with her father, while the younger one expressed her desire to live with her mother, and the court awarded the custody of the younger child to the mother, and this appeal is from that decree.

There was testimony reflecting on Mrs. Cooper's moral character, but this evidence was sharply contradicted, and was evidently not credited by the court. It does appear, however, that Mrs. Cooper bore another child before her marriage to Mr. Cooper, but, as we understand this testimony, Cooper was its father, and married his wife with full knowledge of all the facts

relating to her history, and the testimony of a number of their neighbors in New Orleans was offered in evidence, showing that Mr. and Mrs. Cooper had led exemplary lives during their residence in that city. These witnesses testified that they had known Mr. Cooper and his wife for varying periods of time, some for as much as fourteen months, and that they were living in a good neighborhood and were respected by their neighbors.

The testimony shows that, just before Mr. Patterson's second marriage, he urged appellee to again marry him, but she declined to do so, and on December 3, 1917, she married Mr. Cooper.

We must assume, of course, that the court properly awarded the custody of the children to appellee in the original decree, as that decree was never appealed from or modified. We think also there was no intention on the part of Mrs. Cooper to abandon the children or surrender their custody to Mr. Patterson permanently. If the children had been younger, it would no doubt have been better for the same parent to have been awarded custody of both children, so that each would have had the advantages of the other's companionship, but the older child is now nearly a young lady, and they might soon have been separated had the custody of both been awarded to the same parent.

At any rate, the wishes of the children were consulted, and, while their preference is not of controlling importance, it is a circumstance which cannot be ignored, and, as the younger child is now fourteen years old, she has reached an age which would entitle her to select her own guardian, if she had neither father nor mother, subject to the approval of the probate court. Section 4987, C. & M. Digest.

Good reasons are shown why the father should have the children, but no good reason is shown why the mother might not have at least one of them, and, as we cannot say that the action of the court in awarding the

custody of the younger child to the mother is, according to the preponderance of the evidence, against the child's best interest, the decree of the court below will be affirmed.