VILAS *v.* VILAS.

Opinion delivered October 12, 1931.

*Fred A. Isgrig, Leo P. McLaughlin* and *Frank Pace,* for appellant.

*Martin, Wootton & Martin,* for appellee.

SMITH, J. On February 5, 1930, Mrs. Susan Wharton Vilas obtained, in the Garland Chancery Court, a divorce from her husband, L. A. Vilas. The court found in that case that the parties had agreed "as to the rights of the plaintiff in and to the property of the defendant," and that, pursuant to this agreement, the defendant had created a trust fund of $100,000 for the plaintiff's benefit.

The court was asked to award the custody of the children—three in number and all minors—to the plaintiff, but this was not done. Upon the subject of the custody of the children, the decree recites that "the care and custody of said minor children of plaintiff and defendant is left to the agreement of the parents, and, they failing at any time to agree upon the care and custody of said children, the same shall be subject to the future determination of this court by appropriate order," and that "the court doth retain jurisdiction of this cause for the purpose of making such other and further orders as may be necessary from time to time with reference to the custody, maintenance, support and education of the infant children of the plaintiff and defendant."

By the 29th of September, 1930, the defendant, Mr. Vilas, had obtained possession of all three children and was about to sail with them on a trip to Europe, when Mrs. Vilas filed a petition in the Garland Chancery Court praying that the permanent custody of the children be awarded to her, and that the defendant be restrained from carrying the children out of the jurisdiction of the court. This petition was heard before the court on oral testimony. The trial began on October 30, 1930, and was concluded November 8, 1930.

A decree was rendered in which the custody of all the children was awarded to the father, but it was provided that "the plaintiff be permitted to visit said children at all convenient times, wherever they may be at such times residing; and that said minor children be permitted, if they desire, to visit plaintiff at the expense of the defendant, for a period of thirty days during the summer vacation period, and during one-half of the

Christmas holiday vacation period, and if said minor children do not desire to visit the plaintiff during such periods, she, the plaintiff, be permitted to visit them at some suitable place, and that the defendant provide suitable quarters outside of his home for the plaintiff to visit said minor children during such periods, and that the defendant use all reasonable means to facilitate plaintiff's visiting said minor children."

The court was requested to modify these directions to require the father to send the children on the visits there provided for to their mother, whether the children wished to go or not, but the court declined to impose the requirement that the father compel the children, over their protest, to make these visits.

In an oral opinion delivered before the rendition of this decree the chancellor stated that his conclusion in regard to the custody of the children was largely controlled by the wishes of the children themselves. At the time of the trial in the court below, Ariel, the oldest child, a daughter, was 16 years old; Jack, the second child, a son, was 14 years old, and Susan, the youngest, a daughter, was 12 years of age.

These children were all examined and cross-examined at great length before the chancellor. The examination of these children appears to have required about three days, and a large part of the voluminous record before us covers their examination and cross-examination. The testimony of the youngest child covers 186 pages of the record, of which 157 are devoted to her cross-examination.

This testimony makes the fact perfectly clear that all the children have not only a decided partiality for their father, but have also acquired an antipathy for their mother. Mrs. Vilas says that Mr. Vilas is responsible for this unnatural feeling, and this is no doubt true. Indeed, we are convinced that each parent attempted to prejudice the children against the other parent, and that this has been the fixed purpose of each since the rendition of the divorce decree, which did not

award the custody of the children to either parent. Much of the examination and of the cross-examination of the children was devoted to the development of the activities of the parents in this respect.

The rupture between Ariel, the oldest child, and her mother appears to have occurred before there was an estrangement on the part of the other children. Mrs. Vilas testified that the attitude of Ariel was induced by her insistence that Ariel go to school and be obedient to the authority of herself and of Mr. Vilas. On the other hand, the maid, who was herself a grandmother and who had been employed in the Vilas home for the seven years immediately preceding the separation, testified that Mrs. Vilas had said before the divorce that she did not care what Ariel did so that she did not have a baby. The witness was asked on her cross-examination when and where this remark was made and in whose presence, and she answered that it was made to her by Mrs. Vilas in the kitchen of Mrs. Vilas' home and that the cook was present. The cook was not called as a witness.

Mrs. Vilas denied categorically that she had made any such statement, or that she entertained any such feeling towards her daughter. But, whether she made the remark or not, it is evident that Ariel has convinced herself that her mother is indifferent to her, and the breach between Ariel and her mother appears to be complete and irreconcilable.

Mrs. Vilas was asked what she would do with the children if their custody was awarded to her, and she answered that she very much desired the care and custody of Jack and Sue, but that Ariel was an uncertain quantity, and was unwilling to mind, and was very antagonistic, and we are impressed that, while she would accept the custody of Ariel, this would be done only as an inducement to have the custody of the other children awarded to her.

Ariel testified that she was 16 years old on the 15th of July, 1930, and she will therefore in July of next year, be 18 years of age, a woman of full age for all pur-

possess under the laws of this State. Section 4986, Crawford & Moses' Digest. Jack, the son, testified that he was 14 years old on September 26, 1930, and he is therefore now more than 15 years old. Sue, the youngest child, was 12 years old on August 11, 1930, and she is therefore now more than 13.

The examination and cross-examination of Jack, the son, does not disclose the same bitter feeling manifested by Ariel towards her mother, but he repeatedly stated, in effect, in answer to many questions, that he had but little affection for his mother and preferred to live with his father, and that ''my legal custody I want to be with my father.''

The testimony of Sue was substantially to the same effect.

All three of the children had been in the custody of Mr. Vilas for a few months immediately preceding the trial from which this appeal comes, and it is certain that in this interval he had been assiduous in his attentions to the children, and that it was a part of his purpose to estrange them from their mother. Indeed, it is the insistence of Mrs. Vilas that this estrangement has been accomplished by the persistent overindulgence of the children by Mr. Vilas, and that it was the attempt of Mr. Vilas to take the children to Europe which precipitated the present proceeding.

Much testimony was offered by Mrs. Vilas to the effect that Mr. Vilas had an ungovernable temper, and that he had afforded her ample grounds for divorce on that account. The most pronounced act of this kind consisted in shooting out some of the lights in his home, but this appears to have been done after the separation had become final, and this incident occurred on the last night which Mr. Vilas spent in the home where he had lived with his wife and children for a number of years preceding the final separation.

As to Mr. Vilas' conduct since the divorce, the court found the fact to be that ''he (Vilas) has furnished a home for the children, and kept them together, and

seems to have been sober and industrious and loving and kind to them, and kept them all together." The court below did not find—nor do we find—that Mrs. Vilas is not a proper person to have the custody of her children. On the contrary, testimony was offered by a number of Mrs. Vilas' friends—persons of the highest social position—that her reputation was excellent.

But we have the duty of deciding, under the tragic facts disclosed by the record before us, which parent should have the custody of these children, and our duty in this respect has been defined by act 257 of the General Acts of 1921 (General Acts 1921, page 317). Section 3 of this act reads as follows: "Where the husband and wife are living apart, there may be an adjudication of the court as to their power, rights and duties with respect to the persons and property of their unmarried minor children. In such cases there shall be no preference between the husband and wife, but the welfare of the child must be considered first in determining the custody of such child, or the control of its property. Pending such adjudication the court may award the custody of the child and the control of its property to the father, or the mother as may be to the best interest of all concerned, regarding the interest of the child as of the first importance."

In the case of *Patterson* v. *Cooper,* 163 Ark. 364, 258 S. W. 988, there was involved a contest over the custody of a fourteen-year-old girl between the father and the mother of the child, and we there said: "At any rate, the wishes of the children were consulted, and, while their preference is not of controlling importance, it is a circumstance which cannot be ignored, and, as the younger child is now fourteen years old, she has reached an age which would entitle her to select her own guardian, if she had neither father nor mother, subject to the approval of the probate court. Section 4987, Crawford & Moses' Digest.

This § 4987 does not, of course, give the children here involved the right to choose a guardian, because they

have both a father and a mother, and the statute applies only where the child has neither father nor mother, but we recognized in the Patterson case, *supra,* that this statute declares the policy of the law to consult the wishes of children who have reached the age of discretion in deciding which parent shall have their custody.

It was said in the case of *Lipsey* v. *Battle,* 80 Ark. 287, 97 S. W. 49, in which case the opinion was rendered long prior to the passage of the act of 1921, above referred to, that "courts not only respect the rights and feelings of the parent, but also when the child is of sufficient age they give consideration to its wishes. The child in this case is nearly thirteen years of age. She expressed a decided preference to dwell with her mother. So far as this evidence shows, this mother and child are sincerely attached to each other, and this feeling should not be disregarded, nor the ties of affection sundered, unless the welfare of the child clearly demands that she be separated from her mother. We see nothing in the evidence that requires it." Other cases to the same effect are: *Jackson* v. *Clay,* 89 Ark. 501, 117 S. W. 546; *Longinotti* v. *Longinotti,* 169 Ark. 1001, 277 S. W. 41; *Jackson* v. *Jackson,* 151 Ark. 9, 235 S. W. 47.

At § 745 of Schouler on Marriage, Divorce, Separation and Domestic Relations (6th ed.), it is said: "It is sometimes a question, in proceedings relative to the custody of minors, how far the child's own wishes should be consulted. Where the object is simply that of custody, the rule, though not arbitrary, rests manifestly upon a principle elsewhere often applied; namely, that after a child has attained to years of discretion he may have, in case of controversy, a voice in the selection of his own custodian. The practice is to give the child the right to elect where he will go, if he be of proper age, and the issue is a doubtful one. If he be not of that age, and want of discretion would only expose him to dangers, the court must make an order for placing him in custody of the suitable person; nor will the choice of the child in any case control the court's discretion, and

the affection of the child for others will not suffice to deprive the parents of custody if fit."

Here the daughter, Ariel, and the son, Jack, have both passed the age of fourteen. Indeed, Ariel will soon have attained the age when she will not be subject to the order of the court. Now, it is probably true, as Mrs. Vilas insists, that the children have been influenced in the conclusions they have reached, and in the choice they have expressed, by the conduct of their father, but this is the condition with which we must deal. There is no question about their preference for their father and their hostility to their mother, whatever the cause thereof may have been, and we cannot ignore this preference.

As to the youngest child we have much greater doubt. She is now only thirteen years old, and if her custody alone were involved we would award her custody to her mother, upon the theory and with the hope that if she were given to her mother the association would restore the child's affection for her mother. Ordinarily, a child of this age needs the mother's love and care more than the love and protection of the father. But the testimony of this child makes the fact very plain that she has been influenced in her choice, not only by her father, but by her sister and her brother as well. She referred to their choice and stated that she preferred to be with her brother and sister in their father's care.

To award the youngest child to the mother would mean her separation from her brother and her sister, and, in view of their hostile attitude towards the mother, the alienation of the affection of these children for each other would probably result from their separation. We have therefore concluded to affirm the decree of the chancellor to allow all the children to remain together and in the custody of their father. The right of visitation accorded the mother by the decree of the court below is, of course, unaffected by this decision.

The court assessed the costs of this proceeding against Mr. Vilas and allowed plaintiff an attorney's fee of $2,000, and we are asked to increase this fee to $10,000.

Mr. Vilas is shown to be a man of large means. His income prior to 1930 from his investments alone was, according to his own admissions, between twenty-five and thirty thousand dollars per annum, but this income has since been greatly reduced. The showing was made that the expenses of the litigation which had been paid by the attorneys have exceeded the fee allowed by the court, and the majority have concluded that an additional fee of a thousand dollars should be allowed, and that the costs of this appeal should also be assessed against the defendant.

It is the opinion of the writer and Justices Kirby and McHaney that, inasmuch as a final decree of divorce was granted prior to the institution of the present proceeding, the court had no power to require Mr. Vilas to pay the fee of his wife's attorneys in this case, and they interpret the case of *Nelson* v. *Nelson,* 146 Ark. 362, 225 S. W. 619, as so holding.

The Nelson case was called to the attention of the chancellor, but he distinguished the instant case on the ground that the decree of divorce left the custody of the children an open issue, and that jurisdiction of the question of their custody had been specially retained, and this fact, as stated by him, "made it necessary for the court, in continuation of the original case, to decide at this time upon the custody of the children, and I look upon this case as being simply a completion of the former suit."

The majority of the court are of the opinion that the distinction made by the chancellor is a valid one, and that the present proceeding is, in effect and in fact, a mere continuation of the former suit, and that the court has now jurisdiction to fix a fee to compensate the services rendered by the attorneys since the rendition of the original decree. It is their opinion that this fee is authorized by § 3506, Crawford & Moses' Digest, which reads as follows: "During the pendency of an action for divorce or alimony, the court may allow the wife maintenance and a reasonable fee for her attorneys, and enforce the payment of the same by orders and executions and proceedings as in cases of contempt."

This view of the majority is supported by the opinion of the Supreme Court of Minnesota in the case of *Spratt v. Spratt*, 151 Minn. 458, 187 N. W. 227. The opinion in that case recognized the fact that there was a division in the authorities, a number of which were there cited, but the conclusion was there announced that the chancellor had the power to make an allowance to the wife for her counsel fees in a proceeding for a modification of the judgment respecting the custody of the children, although a decree for divorce had been previously granted.

Accepting this view, the majority are of the opinion that an additional fee of a thousand dollars should be allowed, in view of the labor and expense incurred in the prosecution of this proceeding, and the decree of the court below is therefore modified to increase the allowance of attorney's fees by a thousand dollars. In all other respects the decree is affirmed.

Justices HUMPHREYS and MEHAFFY are of the opinion that the entire decree should be reversed, and that the custody of all three of the children should be awarded to Mrs. Vilas.

The Chief Justice is of the opinion that the decree should be modified to award to Mrs. Vilas the custody of Sue, the youngest child, but not that of the two older children.