MYERS *v.* MYERS.

4-7341                                                      179 S. W. 2d 865

Opinion delivered April 24, 1944.

*Bates & Poe* and *Warner & Warner,* for appellant.

*Hugh M. Bland* and *Pryor & Pryor,* for appellee.

Knox, J.   On September 15, 1942, appellant obtained a divorce from appellee and was awarded custody of their 4-year-old son, the decree providing that appellee should be entitled to custody of the child from Saturday morning until Sunday evening, every two weeks, and should have the right to visit him at all reasonable hours. No appeal was taken from that decree. On December 10, 1942, appellee filed motion asking that she be given custody of the child, alleging, in support thereof, that gas rationing prevented her from making the trip to and from Waldron every two weeks, and that appellant was teaching the child to disrespect her and seeking to wean his affection from her.

On May 7, 1943, appellee filed an amendment to her motion, alleging that she had moved to Atoka, Oklahoma, where she was living with her parents, and was employed at the Government prison camp located nearby; that inadequate public transportation, restrictions imposed on private transportation by gas rationing, the great distance separating Atoka and Waldron, and the requirements of her employment upon her time made it impossible for her to go to Waldron and get the child every two weeks, and that it was for his best interest that permanent custody be awarded to her.

At the time appellant was granted a divorce from appellee she was living in Fort Smith and was employed in the office of her attorney, earning $20 per week. She moved to Atoka on March 8, 1943, and was living with her parents there when her motion to modify the decree was heard. She testified that her salary was $165 per month, and that after deductions she received $130 per

month. The family consists of her mother and father, two brothers, 13 and 16 years of age, and herself. Her father is employed as postal clerk and assistant postmaster at Atoka, and earns $200 per month. He and his wife testified that they were willing to contribute to the child's support and educate him, and that appellee's mother would look after the child. They testified that they had, in open court, offered to do that when the divorce case was tried and custody of the child was given to appellant. Both admitted that the conditions were the same then as they were when the divorce was tried, except that appellee had returned to their home and was employed near Atoka. Appellee's father testified that appellee made no contributions to him or to the home. The parents operate a tourist court with eight cabins, adjoining their home, the income from which is about $250 per month, the mother runs the same during the day and the father rents the cabins at night.

At the time of the rendition of the original decree, the appellant and child were residing at the family residence in Waldron, Arkansas; the housekeeper who had been in the home prior to the separation of the parties, and who knew the child, was in charge of appellant's home. At the time of the rendition of the decree from which this appeal is taken, the housekeeper was no longer employed, but the sister of appellant, an unmarried girl 23 years of age, was keeping house for him, and assisting him in looking after the child. Appellee testified that at times when she had the child in her custody he would start to manifest his affection for her and then hesitate, and say he couldn't do that, that his father had told him not to; that he would also cry to go home and would say that his father told him to do that. Appellee's former roommate corroborated her testimony in this regard, but appellant denied that he had ever made any such suggestion to the child or that he had in any way sought to poison the child's mind against his mother.

We do not have before us the testimony in the original proceeding upon which the chancellor awarded the custody of the child to the father. We must assume that

the chancellor's findings were correct and fully supported by the testimony, especially so since there was no appeal from the decree thus fixing the custody of the child. *Patterson* v. *Cooper,* 163 Ark. 364, 258 S. W. 988. The original decree awarding custody of the child to the father was an adjudication that at the time of the rendition thereof, the father and not the mother was the proper person to have the care, custody and control of the infant. While there is continuing authority in the court granting a decree of divorce to revise or alter orders contained in such decrees affecting custody and control of the minor children of the parties, such orders cannot be changed without proof showing a change in circumstances from those existing at the time of the original order, which changed circumstances, when considered from the standpoint of the child's welfare, are such as to require or justify the transfer of custody from one parent to the other. *Weatherford* v. *Taylor,* 124 Ark. 579, 187 S. W. 450; *Nelson* v. *Nelson,* 146 Ark. 362, 225 S. W. 619; *Jackson* v. *Jackson,* 151 Ark. 9, 235 S. W. 47; *Stone* v. *Crafton,* 156 Ark. 323, 245 S. W. 827; *Hamilton* v. *Anderson,* 176 Ark. 76, 2 S. W. 2d 673; *Kirby* v. *Kirby,* 189 Ark. 937, 75 S. W. 2d 817.

There has been no change in circumstances affecting the home of the father since the original decree, except that a certain housekeeper is no longer employed, and appellant's sister and aunt of the child is in charge of the household. There is not the slightest suggestion in the record that this young lady is not maintaining a suitable home for the child. The close kinship existing between her and the child lends credence to her testimony that she loves the child and has his welfare at heart, and that the child manifests love and affection for her.

While it is true that there has been some change in the mother's circumstances since the entry of the original decree, it does not follow that such change of circumstances is such as to require, or even justify, an order transferring custody. There has been some betterment in the financial condition of the mother. Evidently the court did not at the time of the original decree deny her

custody of the child because of her limited income, since the court had ample power to require the father to provide for the child, even though custody was awarded to the mother. Likewise, the fact that the mother has changed her domicile from Fort Smith, where she shared a small apartment with a girl friend, to Atoka, Oklahoma, where she now resides with her mother and father, has little material effect upon the question. At the original trial appellee's mother and father both testified that appellee and the child were welcome to live with them, and the child would be cared for in the manner which the record discloses is now being done. Appellee at that time offered to take the child and establish her home with her mother and father if granted the custody.

The difference in the circumstances relating to appellee's ability to provide a home for the child, as reflected by the testimony at the two hearings is only this, that the suggested plan offered at the first trial had at the second trial approached nearer materialization, in that the mother had herself actually become a member of her father's household.

These three changes in circumstances, to-wit: (1) substitution of the child's aunt in the place of the retained housekeeper in the father's household; (2) increased earning capacity of the mother; and (3) transfer of the mother's residence; constitute all of the material changes which have occurred since the original hearing.

There is nothing in these circumstances which indicate that the welfare of the child would be better served by transferring his custody to the mother.

Appellee's allegations that the father was teaching the child to hold her in disrespect and contempt, and that he sought to wean the child's affection from her are not established by competent evidence. It is true that she and her former roommate testified that the child had stated that the father had directed him to adopt a certain attitude when in the mother's presence. The fact that the witnesses were quoting alleged statements of a very young boy did not prevent such testimony from

violating the hearsay rule. The father denied that he had ever sought to prejudice the child against his mother. The evidence that the father was poisoning the mind of the child is too meager to justify a transfer of custody. *Jackson* v. *Jackson, supra.*

We have reached the conclusion that the court erred in modifying the original decree so as to award custody of the child to the mother.

The decree is reversed and the cause remanded with directions to deny appellee's petition.