TOWNSEND *v.* LOWREY.

5-3300                                             382 S. W. 2d 1

Opinion delivered September 21, 1964.

*Van Chapman* and *Jack Holt,* for appellant.

*Lightle & Tedder,* for appellant.

JIM JOHNSON, Associate Justice. This appeal arises from child custody proceedings. On Agust 12, 1957, appellant Vestal Townsend obtained a divorce from appellee Barbara Helen Townsend (now Lowrey) in White

Chancery Court. In the divorce decree the Chancellor awarded appellant "the temporary care and custody of Alicia Lynn Townsend, infant child of the parties" and specifically retained jurisdiction for the purpose of making further orders relative to custody. On December 8, 1961, appellee (now a California resident) filed a petition for change of custody, following which the Chancellor obtained reports from the Welfare Departments of Arkansas and California about the living conditions and environments of both parents. After a hearing on May 14, 1962, the Chancellor granted custody of the little girl to her mother (appellee) for the summer months, permitting appellee to take her to California and requiring a $500.00 bond to guarantee the child's return to White County by August 15, 1962. On April 26, 1963, appellee again petitioned for change of custody, praying that she be granted her daughter's custody during the school year, giving appellant custody during the summer months. After another hearing the Chancellor on July 8, 1963, stating that "it now appears that it would be for the best interest of said child that said custody provisions be revised," granted appellee custody of the child during the school year in California and appellant custody in Arkansas during the summer. From this second order comes this appeal.

For reversal appellant urges that (1) there was no evidence upon which to substantiate the court's finding that the appellee should have custody of the child during the school years, and (2) that the trial court abused its discretion in changing custody of the child.

We have no doubt of appellant's love for his daughter. Testimony reveals that appellant cared for her as a baby while appellee worked, before the parties separated. The Arkansas Welfare Department report indicates that at a brother's behest, he quit a pipe-line job in Michigan so that he could help his aged parents raise his daughter. Obviously his parents love their granddaughter Alicia and want her to remain with them. Appellant lives with his parents in a six-room farm home about three miles from Searcy which they rent for $15.00

a month. In addition to appellant, Alicia and the elderly parents, the family circle is completed by a divorced brother and an unmarried sister and her small daughter. Appellant shares a bedroom with his brother and Alicia shares a bedroom (which was once the front hall) with her grandparents. The home is on a recently-paved road and has electricity, telephone and butane heat although there is no running water or indoor toilet facilities. A school bus stops at the house. While appellant's parents have little or no formal education, appellant completed fourth grade and his unmarried sister finished the ninth grade. They testified that appellant would help Alicia with her school work as long as she could and his sister would help her thereafter. At the time of the first hearing the brother and sister were working steadily and the parents were receiving Social Security, Old Age Assistance and commodities. After not working appreciably (other than playing fiddle in a band) for several years, appellant started working at Harding College as a yard man and janitor just before the first hearing and was still so employed a year later at the second hearing. Although appellant's parents are members of a church, they rarely attend. The testimony indicates that Alicia was taken to church infrequently.

The picture of appellee's environment is not as complete; however, perusal of appellee's testimony laid to rest our wonder that she had not sought custody sooner, when she testified that during the first two years in California there was no money to come to Arkansas, hardly enough to pay for food and rent, and that after her son was born he became ill with pneumonia and required long and expensive hospitalization. Appellee and her husband are both steadily employed, have a modern home in a pleasant residential neighborhood close to schools. They own a motor boat and go camping about once a month during the summer. They belong to the Dominicus Methodist Church which they attend fairly regularly, as the children attend Sunday School. The testimony shows that appellee's husband is as anxious

as appellee to have Alicia's custody and raise her with her half-brother.

On this point, it has been well stated that:

"In these matters the desire of the parent for the child, which is a natural emotion, is secondary. Children of tender years are but helpless hostages given to fortune in an environment or condition which is not of their making and in which they would be helpless indeed were it not for the conscience of Chancery." *Bounds* v. *Dunn*, 234 Ark. 514, 353 S. W. 2d 20.

It is axiomatic that our concern, as is the Chancellor's, must be for the welfare of the child. Child custody cases frequently wring forth an earnest coveting of Solomon's insight in order to determine what course is in the child's best interest. In the case at bar, the vast change in appellee's circumstances between the divorce decree and the first temporary custody order is apparent. Appellee, who was 15 when she married appellant, and 17 when she ran off to California, has apparently matured responsibly. Not the fact that appellee and her husband are buying a home but the fact that their furniture, car, truck, boat, motor and their son's large hospital bills are all paid connotes a certain economic responsibility. Their son's enrollment in nursery school and church school (and Alicia's first attendance at school while visiting her mother) indicates that appellee is trying to create an environment of learning for her children, so necessary for well-adjusted growth in our shrinking world.

Review of the entire record lends us to the conclusion that the Chancellor's action in first granting appellee a measure of custody apparently on a trial basis and then, upon proof that such custody was satisfactory and desirable, granting appellee Alicia's custody on a more permanent basis, was a sensible approach to the sensitive problem of what is in this child's best interest. This court has frequently held that "during the period of tender years, it is to the best interest of the child for the mother to have it." *Wimberly* v. *Wimberly*, 202 Ark. 461, 151

S. W. 2d 87. On the record before us, we find no abuse of the Chancellor's discretion.

Affirmed.

WARD, J., concurs; HOLT, J., not participating.

PAUL WARD, Associate Justice (concurring). In an attempt to preserve some semblance of consistency and continuity in our decisions dealing with the important and tender subject of child custody, I am constrained to give briefly my reasons for concurring in the majority opinion.

The prime, if not the only, point relied on by appellant in this case was the well known rule that there was no "change in conditions" to justify changing the previous order of the court giving custody (for nine months each year) to him. We have announced this rule uniformly and consistently. See *Weatherton* v. *Taylor,* 124 Ark. 579, 187 S. W. 450; *Jackson* v. *Jackson,* 151 Ark. 9, 235 S. W. 47; *Hamilton* v. *Anderson,* 176 Ark. 76, 2 S. W. 2d 673; *Kirby* v. *Kirby,* 189 Ark. 937, 75 S. W. 2d 817; *Myers* v. *Myers,* 207 Ark. 169, 179 S. W. 2d 865; *Bounds* v. *Dunn,* 234 Ark. 514; 353 S. W. 2d 20. In the *Myers* case the Court said, in reference to former orders of child custody:

". . . such orders *cannot* be changed without proof showing a change in circumstances from those existing at the time of the original order . . ." (Emphasis added.)

Notwithstanding the above, the majority ignored the real point involved and chose to base their decision on a quotation lifted from the *Bounds* case cited above which is a beautiful eulogy on the love of a parent for his offspring and the "conscience of Chancery". The trouble with the quoted language is (a) that it lacks reason and logic when lifted out of context, and (b) when read in context it fails to support the majority opinion. (a) If love of the mother for her child is a ground for awarding her custody, then the love of its father is a ground for awarding him custody. (b) In the *Bounds* case the court first gave the custody of two small children to the

father; in a later action the mother sought to change custody to her. The trial court refused to make the change and we affirmed, quoting this language:

" 'A party seeking modification of a divorce decree provision for custody of a child on the ground of changed conditions bears the burden of proof of changed conditions warranting a modification in the interest of the child.' "

I agree with the result reached by the majority. I do so, however, with some reluctance because, while there is some evidence of "change of condition", it is not really convincing.