Carleton Harris, Chief Justice, dissenting. I would reverse this case for two reasons, first, because, under our cases, unless there are extraordinary reasons for not doing so, the mother is favored to have custody of small children. In the next place, and more important, I would reverse the case because I strongly feel that the welfare of the two little girls demands that they be placed with her. These children are six and three years of age and accordingly it will be a long number of years before either attains her majority. The choice on this point is simply whether the little girls will be better off with their own mother (who has shown enough interest in them to pursue them over the country), or with their father’s second wife. The father, of course, will be at his job, and they, in large measure, will be reared, under this court’s decision, by a twenty-one year old stepmother. In Perkins v. Perkins, 226 Ark. 765, 293 S.W. 2d 889, we stated, “It is a matter of common knowledge that usually there is no love like a mother’s love; this is a law of nature that is almost invariable, and unless there are compelling reasons for giving some one other than the mother custody of a small child, it should not be done.” (my emphasis) In Wimberly v. Wimberly, 202 Ark. 461, 151 S.W. 2d 87, this court said, “There is nothing in this case from which it can definitely be said that it is to the best interest of the child for the mother to have custody of it, save and except the humanitarian rule which has most generally been adopted by the courts that during the period of tender years the child should be left in the care of the mother.” Case after case could be cited, but I know of no Arkansas case where, all things being equal, custody of small children was given to the father rather than to the mother. Of course, the controlling consideration is the welfare of the children. Bornhoft v. Thompson, 237 Ark. 256, 372 S.W. 2d 616. In Haller v. Haller, 234 Ark. 984, 356 S.W. 2d 9, we commented that the welfare of the children is the “polestar”. Custody is being denied the mother and being given to the father because the majority finds “that there has been no change in circumstance since February 16, 1972, substantial enough to justify changing the custody of these two little girls * * I cannot agree, and it almost seems to me that this mother is being punished for entering into the stipulation, mentioned by the majority, and it unquestionably caused both the trial court and this court to refuse the change of custody. I submit, that under the circumstances, this fact is not sufficient for refusing a custody change. To support my position in this respect, it is necessary to review a few facts appearing in the record. According to appellant, while she was married to appellee, he did not support her or the children the last year or so of marriage. Appellee admitted that he didn’t support the children following the separation and prior to the divorce, but said it was because his wife was “pouring the money on another man”.[1] Appellant testified that subsequent to the separation appellee came to Arkansas to get the children to visit for the summer. When he did not return, she called at his place of employment in Indiana and was informed that he had left. She testified that she could not learn where he was, and went to the home of his parents in Florida to find him, but his mother slammed the door in her face and said she didn’t know where the children were. Mrs. Cousins testified that she knew nothing about the divorce in Indiana until she, herself, filed for divorce. Subsequently, her attorney advised her that she was already divorced. In February, 1972, Mrs. Cousins filed a suit in the Juvenile Court in Ohio in an effort to obtain visitation rights. She said her lawyers told her not to ask for custody at that time because she had no home for the children, and I submit that under the circumstances (the mother in the courts of another state desperately seeking an opportunity to be with her children, and obeying the advice of her attorneys), should not be penalized for entering into the stipulation. That the mother was not in a position at the time of the divorce to take care of the children is reflected from the testimony of appellee himself. From the record: “Q. Now, Mr. Smith. As I understand it now, at the time the divorce was granted, your wife at that time was trying to work and support herself. You weren’t paying her any support or alimony, were you? A. No, I wudn’t. Indiana doesn’t require you to pay alimony. She didn’t have the children so I didn’t have to pay her anything. Q. And so the thing about it is, she had no home for the children, did she? A. She could have made one as easy as I could have. Q. And at the same time, she was trying to support herself. Is that right? A. Yes.” Townsend v. Lowery, 238 Ark. 388, 382 S.W. 2d 1, bears similarity to the case at hand, in that the father originally had custody of the children, but the court subsequently awarded custody to the mother, not because of any misconduct on the part of the father, and, in doing so, commented that during the period of tender years, it is to the best interest of the child for the mother to have it. The opinion contained, in my view, language pertinent to this cause as follows: “In the divorce decree the Chancellor awarded appellant 'the temporary care and custody of Alicia Lynn Townsend, infant child of the parties’ and specifically retained jurisdiction for the purpose of making further orders relative to custody. * * * * After a hearing on May 14, 1962, the Chancellor granted custody of the little girl to her mother (appellee) for the summer months, permitting appellee to take her to California and requiring a $500.00 bond to guarantee the child’s return to White County by August 15, 1962. On April 26, 1963, appellee again petitioned for change of custody, praying that she be granted her daughter’s custody during the school year, giving appellant custody during the summer months. After another hearing the Chancellor on July 8, 1973, stating that ‘it now appears that it would be for the best interest of said child that said custody provisions be revised,’ granted appellee custody of the child during the school year in California and appellant custody in Arkansas during the summer. “We have no doubt of appellant’s love for his daughter. Testimony reveals that appellant cared for her as a baby while appellee worked, before the parties separated. The Arkansas Welfare Department report indicates that at a brother’s behest, he quit a pipeline job in Michigan so that he could help his aged parents raise his daughter.’’ One thing concerning the father is rather disturbing to me. He testified that prior to the time when the children came to Arkansas to spend the summer with their mother, the children were left for two months with a lady who kept them from 8:00 A.M. until 5:30 P.M.; yet, he did not even know the name of this woman. Some of the leading citizens of Van Burén[2] testified on behalf of appellant and her husband, pointing out that they lived in a nice home, attended church regularly, bringing the children with them[3] and were very attentive to the children. The children themselves, according to these witnesses, were very attractive, clean, well-dressed, appeared to be happy, and were receiving adequate care in the home. Mr. Cousins testified that he could support his wife and the children without her having to work;[4] that he gets along fine with the little girls and would like for his wife to have custody, and that he would support them if their father refused to do so._ Let me again emphasize that these children are of tender years, and in line with our cases, should, in my opinion, be placed with their mother. I think this is particularly true where the children are little girls. In fact, as stated at the outset of this dissent, I know of no case, and none has been cited, where, all things being equal (both parents able financially, and qualified morally), children of this age have been placed with the father instead of the mother. I, therefore, respectfully dissent. Brown and Holt, JJ., join in this dissent. The only allegations with reference to immorality are contained in the testimony of the two parties concerning each other, and I do not consider that immoral acts were established by either. From the record, I would conclude that both are morally qualified to have custody. These included Darrell Thomas, operator of a foam rubber plant in Van Burén and his wife; Mrs. Linda Groom, a case worker for the Department of Social and Rehabilitation Services of Arkansas; Fred Patton, manager of Gordon Transports Truck Line in Fort Smith and an active leader in the First Methodist Church; Dr. John Bayliss, pastor of the First United Methodist Church in Fort Smith; Judge Milton Willis, County Judge of Crawford County for the past eight years; Dr. Jack L. Magness, pediatrician; and Mayor Allen R. Toothaker, Mayor of Van Burén for the last fifteen years. Appellee does not attend church but stated that his sister took the children to church when they lived at Maderia, Though appellee stated that his wife would quit work as soon as they returned to Cincinnati, the fact remains that she was working at the time of the hearing from 8:00 A.M. to 5:00 P.M.