WEST *v.* GRIFFIN.

4-7368                           180 S. W. 2d 839

Opinion delivered May 29, 1944.

O. W. Pete Wiggins, for appellant.

Talley, Owen & Talley, for appellee.

SMITH, J. Harold Warren Griffin and Callie Jones were married August 27, 1938. He is now 27 years of age, and she is 23. They lived together as husband and wife, in Little Rock, until May, 1941, when they separated. They had at that time a boy child, named Harold Douglas Griffin, 18 months of age. The husband filed suit for divorce on the ground of desertion, and prayed that the custody of the child be awarded him. He was granted a divorce November 10, 1942, and the decree awarded the custody of this child to him. The decree contained the recital, "That the defendant (the mother) is an unfit person to have the custody of said child and the custody of said child shall be awarded to the plaintiff (the father)." The complaint filed in the divorce case contained no allegation as to the unfitness of the mother to have the custody of the child, and it is admitted that no testimony to that effect was offered in the divorce proceeding.

The husband was employed as a soda water dispenser and earned $15 per week. On account of his meager salary his wife also worked and her wages exceeded his.

It appears to have been agreed that a suit for divorce should be filed. Mrs. Griffin went on a visit to California to see her sister, residing in San Francisco, but became ill before reaching her destination. When she left she told her husband that she would be unable to care for the child and that if he was going to join the army she would be willing for some relative to have its custody. He accompanied his wife to the train when she departed, and stated "at the time she left we were still talking about going back together."

After reaching California Mrs. Griffin signed an entry of appearance in the divorce case, and did not contest it, as she was without means, but she testified that she did not know that her husband had asked for the custody of the child. She knew that her husband had made an arrangement with her brother and sister to look after the child. Under this arrangement, her sister took charge of the child at the time of the separation, and the sister and her husband moved into Griffin's home and shared equally. the rent and utilities. This arrangement continued for about a year, when Mrs. Griffin's sister and her husband moved out, and her brother and his wife moved into Griffin's home, and remained there under the same arrangement as to the rent and utilities.

After the rendition of the divorce decree Mrs. Griffin met and married Victor Lewis West, Jr., Chief Yeoman in the United States Navy, whose salary is $170 per month. The father of this second husband is a banker residing in the State of New Jersey.

Mrs. Griffin, now Mrs. West, testified that it was agreed, when she left Little Rock where she and Griffin had lived together as man and wife, that if she remarried she might have the child; but this he denied. Mrs. West testified that she wrote her sister residing in Little Rock to ask Griffin for the child, and her sister wrote that Griffin agreed that she might have it, and immediately upon receipt of this letter she left her home in Seattle, Washington, where she then resided, to get her child. Griffin denied that he made this agreement, but Mrs. West's sister testified that he did.

When Mrs. West arrived in Little Rock she found Griffin had taken the child to the home of his parents, who reside on a seven-acre farm near Mammoth Spring, in this State, and that the child had been there two or three weeks before her arrival in Little Rock. She thereupon brought this suit to recover possession of the child.

The court found that there had been neither·allegation nor proof as to Mrs. West's unfitness to have the custody of her child, and deleted that recital from the decree, and it was ''Considered, ordered, adjudged and

decreed that the custody of Harold Douglas Griffin be vested in the paternal grandparents, Mr. and Mrs. W. W. Griffin, at Mammoth Spring, Arkansas, until the further orders of the court.''

Mr. Griffin, the grandfather, is 67 years old, and his wife, the grandmother, is 63. Her health is good but not vigorous. The grandfather testified that he and his wife were prepared to care for the child and were anxious for him to remain in their custody, as they were much attached to the child and he was contented to remain in their home.

This is not a case where a child has been permitted to remain in certain surroundings for a period of time long enough to become so accustomed to its surroundings as to make it unwise to remove it. We do not have here the situation that was shown in the case of *French* v. *Graves,* 205 Ark. 409, 168 S. W. 2d 1108, because this child had been with the grandparents only two or three weeks at the time of the rendition of the decree from which is this appeal.

It was said in the recent case of *Myers* v. *Myers, ante,* p. ........, 179 S. W. 2d 865, that: ''While there is continuing authority in the court granting a decree of divorce to revise or alter orders contained in such decrees affecting custody and control of the minor children of the parties, such orders cannot be changed without proof showing a change in circumstances from those existing at the time of the original order, which changed circumstances, when considered from the standpoint of the child's welfare, are such as to require or justify the transfer of custody from one parent to the other (Citing cases.)''

It will be remembered that this is not a case in which the court reaffirmed its order awarding custody of the child. That order was modified in the decree from which is this appeal and the child's custody was awarded to persons who were not parties to the original proceeding and are not parties to this proceeding. We think this was error. This order was, no doubt, intended to be provisional and temporary, as Mr. Griffin testified that he was

taking training to prepare himself for special work overseas, and that he would leave for this service as soon as he had completed this training. He admitted also that he contemplated remarrying before going overseas, if so, he would, no doubt, expect the redelivery of his child when he returned from his service overseas, so that the child would then be taken from the custody of its grandparents, if not he would have no right to take the child from its mother and give it to its grandparents. *Baker* v. *Durham*, 95 Ark. 355, 129 S. W. 789.

It is a tragedy in the life of any child whose parents separate and are divorced. In these circumstances the courts should be and are greatly concerned about the welfare of the offspring. *Verser* v. *Ford*, 37 Ark. 27. It is not then so much what would be best for the child, which would be the reconciliation of the parents, but if that does not occur—and we cannot order it—the question then is, what would be least detrimental to the child, where neither parent is shown to be unfit to have the custody of their child, as is true here.

The child is still of tender years and needs the care, affection and attention of one parent, if it may not have that of both. The father is about to go overseas, and the time of his return is, at least, indefinite, while the mother will remain in this country, although not in this state, and the court may, and upon the remand of this case, will retain jurisdiction thereof, for the purpose of making any future order which any change of condition may require.

There is no fact or circumstance in this record which indicates that the mother abandoned the child, or that she ever at any time ceased to be interested in its welfare. After her separation she was unable to support herself and the child from her own earnings, and she testified that the arrangement with her former husband was that the child should be left in the care of her people until she remarried. Griffin denied the existence of this agreement, but the fact is undisputed that the child did remain first with the mother's sister and her husband, and later

with her brother and his wife, until two or three weeks before the hearing from which is this appeal.

Mrs. West testified that her husband has a salary of $170 per month, plus the usual commutations allowed by the Navy, and that she herself is employed by the Western Union Telegraph Company, at a salary of $30 per week. But she offers, if the court requires, to abandon her employment and devote her entire time to the child. She testified, however, that she has a comfortable apartment, and a maid who would attend the child; that the child would have better educational advantages than he would have with his grandparents; that she is a church member, and would see that the child had a Christian environment. She further testified that she could have no other children, a fact known to her present husband; that he was willing to take the child into his home, and would adopt it if permitted to do so. When Mrs. West came here she expected to get her son and return at once, but when its grandparents refused to surrender the child to her, she advised her husband, who directed her to remain here and see the matter through, and this she did.

We have had many cases on this subject, but the facts in no two of them are exactly alike, and there are frequently misgivings as to the appropriate order to make concerning the custody of a child whose future has been jeopardized without fault of its own. In this case we have concluded that, due regard being had to the rights of the respective parents, the best interests of the child suggest that its custody be awarded to the mother, and the decree of the court below will be reversed and the cause remanded, with directions that appropriate orders to that effect be made. *Gibson* v. *Gibson,* 156 Ark. 30, 245 S. W. 32.