BLAKE v. SMITH.

4-7738                                          190 S. W. 2d 455

Opinion delivered November 12, 1945.
Rehearing denied December 10, 1945.

*J. Fred Jones,* for appellant.

*O. W. Pete Wiggins,* for appellee.

HOLT, J.   This litigation involves the care and custody of a little eight-year-old girl, who was adopted by appellant and appellee a few hours after her birth.   The parties here were married in 1923, divorced in 1936, remarried a short time later, and a divorce was granted appellee May 31, 1944, but the custody of the child was awarded to appellant.   That part of this divorce decree of 1944 in so far as it relates to the child involved here, recites: "The custody of the infant child, whose custody is involved in this action, to-wit: Mary Dolores Blake, be and the same is hereby awarded as follows: To the defendant, with the plaintiff being permitted to visit said child at any reasonable times, until the further order of this court or of some other court or judge vested with competent jurisdiction to change the custody of said child. . . .   The court doth retain control of this cause for such further orders and proceedings as may be necessary to ascertain definitely and enforce the rights of the parties hereto in the property herein referred to."

June 7, 1944, appellee went to Houston, Texas, and married Hale A. Smith on June 8, 1944, and has since resided in that city. Hale Smith had secured a divorce from his wife in the Pulaski chancery court on February 24, 1944, after establishing a residence here for that purpose, and his only child, a daughter 14 years of age, was awarded to the mother, Minnie Smith.

February 26, 1945, appellee filed petition in the court here, asking for a change in the custody of the child and that it be awarded to her on the grounds "that said child is not getting proper care and attention, . . . that the defendant (appellant) has done all in his power to poison the mind of said child against the plaintiff, . . . and that said child is not receiving the love, attention and affection, as well as the motherly supervision, she is needing and rightly entitled to receive," and prayed for "an order granting to her the custody and responsibility of said child in the future."

April 10, 1945, upon a hearing; the decree of May 31, 1944, *supra,* was modified by the Pulaski chancery court and the custody of the child was given to appellee for approximately nine months of the year—or the school months, and to the appellant, the remaining three months —or vacation months.

From this decree modifying the divorce decree of May 31, 1944, comes this appeal.

The cause is before us for trial *de novo.*

In determining the custody of a minor child, the welfare of the child is the supreme and controlling consideration. In the comparatively recent case of *Kirby* v. *Kirby,* 189 Ark. 937, 75 S. W. 2d 817, we said: "It is the well-settled doctrine in this state that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity. Act 257 of 1921 (now §§ 6203-6207, Pope's Digest). . . . A decree fixing the custody of a child is, however, final on the conditions

then existing, and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child." See, also, *Phelps* v. *Phelps, ante,* p. 44, 189 S. W. 2d 617. The party seeking a modification of a divorce decree awarding custody of a minor child assumes the burden of showing such a change in conditions as to justify such modification. *Kirby* v. *Kirby, supra,* and *Seigfried* v. *Seigfried* (Mo. App.), 187 S. W. 2d 768.

We proceed to examine the evidence to determine whether there has been such change in conditions as would warrant the decree of the lower court dividing the custody of this little girl, as above indicated.

After a careful review of the entire record, we have reached the conclusion that the preponderance of the testimony does not support the findings of the trial court and the decree thereon.

The record discloses, as above noted, that prior to the granting of the decree of divorce to appellee, May 31, 1944, and the awarding of the child to the father, appellant, Hale A. Smith came from Houston, Texas, to Little Rock, established his residence and obtained a divorce from his wife in February, 1944. While residing in Little Rock, he boarded most of the time in the home of appellant and appellee. During a part of his stay here, appellee's mother boarded Smith. Appellee, Mary Blake Smith, admitted that she had been in love with Hale Smith since she was 15 years of age, or for approximately 25 years. Immediately after Smith procured his divorce here, he went back to Houston, assumed his work as a longshoreman on the docks there, and has since resided in that city.

Appellee kept in touch with Smith by letters and telephone after his decree of divorce here and prior to her divorce from appellant. One of appellee's letters to Hale Smith contains matter too indecent and obscene to be set out here. Immediately following appellee's divorce from appellant here, she went to Houston, Texas, and married Hale A. Smith. There they have since lived in a

four-room house in the "working men's" section of Houston. This house contains a bedroom, a living room with a studio couch that unfolds to accommodate two people, and appellee's mother lives with her a great part of the time. The last time she spent four months with appellee and was there when this case was tried. This mother of appellee devotes at least a part of her time to gambling. In her own words, "A. When I started going to the races, then I started to Belvedere and I am a racing fiend. Q. Do you usually win at the races? A. Well, I have come home without." Appellee's health has improved some since she married Smith, but is still under the care of a specialist.

Appellant, following the divorce decree, by permission of the Pulaski chancery court, took this little adopted child to Mobile, Alabama, and placed her in the home of his brother and his wife, Hazel Blake, who have two little girls near this child's own age, whose company and association she enjoys. She goes to school there and is making fair progress. Appellant earns good wages and is devoted to the child. There is no evidence that he has ever mistreated her. The child and the two little girls of Hazel Blake have a bedroom to themselves, and she has the care and guidance of Mrs. Hazel Blake, whose character is unquestioned.

There is some little evidence in support of appellee's allegation that appellant tried to alienate this child's affections from appellee. However, this alone would not be sufficient grounds to warrant a change in the child's custody. In *Jackson* v. *Jackson,* 151 Ark. 9, 235 S. W. 47, we said: "A change of custody was not necessary in order to prevent the mother from alienating the affections of the child from the father. This might have been done by admonishing the mother."

Appellee also says that the child's custody should be changed and given to her for the reason that she "is not receiving the love, attention and affection, as well as the motherly supervision, she is needing and rightly entitled to receive." Appellee's professed love for the child is strongly contradicted by her actions, which speak so much louder than her words. We have before us here a woman

who brazenly admitted that she had been in love with Hale Smith over a long period of years, and during all the time that she was married to appellant. That she possessed a degraded intellect was indicated by the vile language in one of her letters to Smith, referred to above. After ridding herself of appellant by divorce, she transferred her affections to Smith, deliberately abandoned this little adopted girl, hurried to Texas and married Smith, and there in a small house with but one bedroom, she lives with her new husband. A part, if not the greater part, of appellee's mother's time is spent in this home with appellee. It is into these surroundings, influences and environment that appellee proposed to take the child.

Appellant, on the other hand, has not remarried. The evidence reflects his devotion to this little girl. He earns good wages and is amply able to and is adequately supporting her. He has been caring for the child since the divorce in May, 1944, and shortly after the decree, with the court's permission, took her to Mobile, Alabama, and placed her in the home of his brother and sister-in-law, where she has been given that care, attention and motherly love which appellee voluntarily refused to give.

It is our view that the preponderance of the testimony but emphasizes the soundness and wisdom of the trial court's original decree in which the custody of this child was awarded to appellant. We find nothing in the evidence indicating such changed conditions since that decree which would justify a modification thereof. In *Rose* v. *Rose,* 90 Ark. 16, 117 S. W. 752, this court says: "We are also of the opinion that the decree was erroneous with reference to the custody of the child. The custody was divided between the two parents—three weeks alternately to the father and one week to the mother. In view of the fact that the mother voluntarily parted with the child when it was very young, and the father has had it since then, we do not feel justified in disturbing the decree awarding the custody to him. And, of course, the mother should, notwithstanding the fact that she was willing to give the child up, be permitted to see it at reasonable intervals and have an opportunity to enjoy its society. But we deem it inadvisable, for the good of the

child, for it to be shifted about at frequent intervals from the custody of one parent to another."

For the error indicated, the decree is reversed and the cause remanded with directions to dismiss appellee's petition for want of equity and for further proceedings consistent with this opinion.