Thompson *v.* Thompson.

4-8450                                          212 S. W. 2d 8

Opinion delivered June 7, 1948.

Rehearing denied July 5, 1948.

*John R. Thompson,* for appellant.

*George Shepherd* and *Wood & Smith,* for appellee.

ROBINS, J. Appellant sued appellee for divorce, and appellee, on his cross complaint, was granted divorce; and custody of their child, Yvonne, then five years old, was awarded to appellee's mother. On appeal from that part of the decree fixing custody of the child we reversed the order of the lower court, and directed that custody of the child be given to appellant, the mother, with appellee being accorded the right to visit the child at appropriate times. *Thompson* v. *Thompson,* 209 Ark.

734, 192 S. W. 2d 223. On filing of our mandate, the lower court made an order in compliance therewith.

On March 1, 1947, appellant filed a petition in the lower court asking that she be granted permission to take her daughter with her to a new home to be estab- lished by appellant in Florida with Claude K. Barco, whom she was about to marry. Appellee thereupon filed reply to said petition, asking that the previous order, made in obedience to our mandate, be changed so as to take the custody of this little girl from appellant, her mother, and give it to appellee. From an order made by the lower court on September 26, 1947, changing the custody of the child and giving it to appellee, this appeal is prosecuted by appellant.

While any order as to custody of a child is subject to future modification by the court making it, the rule, uniformly adhered to by us, is that before such modifi- cation may be made it must be shown that, after the making of the original order, there has been such a change in the situation as to require, in the interest of the minor, the change to be made, or it must be shown that material facts affecting the welfare of the child were unknown to the court when the first order was made. *Myers* v. *Myers,* 207 Ark 169, 179 S. W. 2d 865; *West* v. *Griffin,* 207 Ark. 367, 180 S. W. 2d 839; *Miller* v. *Miller,* 208 Ark. 1058, 189 S. W. 2d 371; *Phelps* v. *Phelps,* 209 Ark. 44, 189 S. W. 2d 617; *Graves* v. *French,* 209 Ark. 564, 191 S. W. 2d 590.

It is not insisted that any material facts affecting the welfare of the child were unknown to the court when the previous order awarding custody to appellant was made. Therefore, the only inquiry here is: Has there been such a material change in the situation as would require a modification of the former order so as to deny to the mother custody of her little daughter?

While there was an effort on the part of appellee to show that the new husband of appellant—she mar- ried Barco while the litigation was pending—was of such character as to render him unfit to be the step-father

of the child, there was no definite proof to sustain such a contention. On the contrary, it was shown that he was a man of some means, that he had given appellant property of the approximate value of $35,000 and that he owned and maintained a comfortable home. He had formerly been engaged in the meat packing business, but at the time of trial was a law student in the University of Florida, expecting to graduate in the fall of 1948. He is a member of the Presbyterian church and of several fraternities. He had two sons, both of whom were in college.

The chief basis for the contention that the Barco home was not a proper one for the child was that Barco had but recently obtained a decree of divorce (in Florida) against a former wife and that this former wife had taken an appeal to the Supreme Court of Florida. It was urged—and the lower court adopted the view—that, since there was an uncertainty about the validity of appellant's marriage to Barco, the child ought not to be permitted to go to the Barco home pending a settlement of this uncertainty.

The chancellor made this statement at the conclusion of the testimony: ''Now, weighing all the evidence and the testimony before the court, and discerning these parties before the court, it is the opinion of the court that there is now just one controlling issue in the case and that issue is this—'should the court let this child go down to Florida now where the Barco marital status is so uncertain and Mr. Barco's case is now on appeal—should the court permit this little child to be taken out of school and away from these people, not ever having been in the home in Florida, until the marital status at least is cleared up?' In other words, the mother of this child, Marcelyn Thompson Barco, may be right back here in Little Rock in thirty days. It seems to the court that it would be unfair to pick the child up now and take her out of school and send her to Florida in a new home with a new father dominating her. She would have to adjust herself to the new environment and to the new way of living. Now, if that were a stable home and we knew that the mother was there to stay, we would

view it from a different angle and ask that a thorough investigation be made by social agencies. I believe it would be a tragedy and very harmful to the child to make her undergo that change, not knowing it was a permanent arrangement for the child. In other words, Mrs. Barco, if the Florida court reverses the lower court, you and Mr. Barco would not be married. I read the deposition of the clerk of the Supreme Court of Florida thoroughly and he said the case is on appeal and they cannot approximate the date an opinion will be delivered. I think it will be agreed that now is a very inopportune time to change the little child's environment and schooling and subject her to adjusting herself when she may be right back in Little Rock.''

We cannot agree that uncertainty as to Barco's marital status was sufficient ground to justify an order taking this little girl away from her mother. The lower court should have indulged the presumption in favor of appellant that if her marriage to Barco proved invalid by reason of adverse action of the appellate court, appellant would have no longer remained in his home. Certainly appellant's marriage to Barco was *prima facie* legal—and appellant ought not to be deprived of her daughter's custody because appellant saw fit to enter into a marriage with a respectable man, who had been declared eligible to marry by a court of competent jurisdiction. It may be noted, however, that the Supreme Court of Florida, on April 20, 1948, after the trial of the case at bar, affirmed the lower court's decree granting divorce to Barco. *Barco v. Barco,* 34 So. 2d 879.

We conclude that the testimony does not show that there has been such a change in the situation as will adversely affect the welfare of the child, and justify an order taking this little girl away from her mother, who, as this court has already found, was capable of rearing her properly.

Nor do we think there was sufficient reason shown to deny appellant the right to take her daughter with her to her new home.

Discussing a somewhat similar question, this court said, in the case of *Weatherton* v. *Taylor,* 124 Ark. 579, 187 S. W. 450: "If the established facts justify the conclusion that the mother of the child is capable of giving proper care to the child, and that she will comply with the orders of the court, it would not be beyond the power of the court to permit her to take the child to her home in another state."

Appellee should be afforded the opportunity to have his daughter visit him at reasonable and proper times, and at least twice each year—once for a week during Christmas holidays and once for three weeks during the summer. Appellant should be required to defray the expense of those trips. To insure compliance on the part of appellant with the terms of the order to be made, she should be required to file a bond in the sum of $3,500, with good and sufficient surety, to guarantee her faithful observance of the terms of such order.

The decree of the lower court is accordingly reversed and this cause is remanded with directions to the lower court to enter an order in accordance with this opinion; appellee to pay the costs of this court and appellant to pay costs in the court below.

The Chief Justice, although not legally disqualified, did not participate in discussions incident to the case, or take part in its determination; nor did he attend the Court's conference during the time the appeal was being considered.

Order Per Curiam July 5, 1948.

No. 8450—*Marčelyn Thompson* v. *Henry V. Thompson,* from Pulaski chancery; rehearing denied, but the opinion of June 7 is amended, permitting the father to have custody of Yvonne eight weeks during each summer, the current period to begin June 7, 1948.