SMITH *v.* SMITH.

4-8419                                             212 S. W. 2d 10

Opinion delivered June 14, 1948.

*Ross Robley,* for appellant.

*Byron Bogard,* for appellee.

HOLT, J. Appellant, Marvin J. Smith, and appellee, Pauline Nell Smith, were married February 14, 1942. Two children were born to this union, a girl now five and a boy three. These parties separated July 4, 1946, and on the 25th of July thereafter, appellee obtained a decree of divorce from appellant, the two childern were by the court placed in the care and custody of the maternal grandmother, Mrs. Dan Beavers, and appellant was directed to pay $60 per month for their maintenance. Each of the parties has remarried since the above decree.

Appellant filed the present suit June 16, 1947, asking for the care and custody of these children on the grounds of alleged changed conditions such as would warrant change of custody to him. The trial court denied his petition, and from the decree is this appeal. The findings of the trial court were amply supported by the testimony.

The evidence shows that Mr. and Mrs. Dan Beavers have had the care and custody of these children practically all of their lives. Mrs. Beavers is 47 years old and her husband 53. They are shown to be good people and have given these children the only home they have ever known. They gave them excellent care and are devoted to them.

On the other hand, appellant has shown very little interest or affection for his children since their birth. In fact, he has virtually abandoned them. He has failed to comply with the order of the court as to maintenance and by his own admissions for a year or more prior to the present suit, has contributed nothing towards their support. He proposes to take them to Port Allen, La., where he lives with his second wife in the home of his mother-in-law and to allow his mother-in-law, 57 years of age, to care for the children while he and his wife continue their present employment in Baton Rouge, La.

The evidence further shows that following the court's order for the maintenance payments, appellant left the State of Arkansas and ignored the court's order. Following the above order, appellant returned to Little Rock only once, and that was on his "honeymoon" with his second wife. (Quoting from his testimony) : "Q. And you came to Little Rock on your honeymoon A. I did. Q. And you didn't bring them any money? A. No, I didn't. Q. So for the past year, as far as you are concerned, these children could have been wards on charity of the Pulaski County Juvenile Court, couldn't they, while you were honeymooning with your present wife and going in debt to do it, that's true isn't it? A. That's true. Q. Did you visit with the children when you were here, Mr. Smith? A. No, because I knew it would be trouble for me and my wife and we wouldn't be able to do anything about that. Q. Did you call the home of Mrs. Beavers to ask how they were and if they were in good health? A. No, I found my children were in good health through various people. Q. All the time you have been away from the children, have you written them letters asking Mrs. Beavers to read them to them? A. No, I haven't. . . . Q. What prompted you to come to

Little Rock on this particular occasion, Mr. Smith? A. I received a letter from the Prosecuting Attorney. . . . Q. This letter from the Prosecuting Attorney's office in Little Rock was with respect to the support of your minor children here, wasn't it? A. Yes. Q. It was in response to that letter that you made the trip to Little Rock and it was after you got to Little Rock that you employed an attorney and filed this petition to get the children, wasn't it? A. Yes, it was.''

Appellant admitted borrowing $250 for his honeymoon trip but none of this money went to the maintenance of his children.

Until the present suit was filed, appellant made no complaint as to the care and treatment these children were receiving at the hands of their grandparents.

The grandmother, Mrs. Beavers, testified: (Appellant's brief) ''I am 47. No one lives in the house but we and the children. My husband is Dan Beavers who works for Leird Lumber Company, aged 53, and earns $40 a week. Had these children since birth, save three months. They are four and three respectively.''

According to our long established rule in cases of this nature: ''In determining the custody of a minor child, the welfare of the child is the supreme and controlling consideration. In the comparatively recent case of *Kirby* v. *Kirby,* 189 Ark. 937, 75 S. W. 2d 817, we said: 'It is the well-settled doctrine in this state that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity. Act 257 of 1921 (now §§ 6203-6207, Pope's Digest). . . . A decree fixing the custody of a child is, however, final on the conditions then existing, and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child.' See, also, *Phelps* v. *Phelps,* 209 Ark. 44, 189 S. W. 2d 617. The party seeking a modification of a di-

640

vorce decree awarding custody of a minor child assumes the burden of showing such a change in conditions as to justify such modification. *Kirby* v. *Kirby, supra,* and *Seigfried* v. *Seigfried* (Mo. App.), 187 S. W. 2d 768;" *Blake* v. *Smith,* 209 Ark. 304, 190 S. W. 2d 455.

We also said in *Graves* v. *French,* 209 Ark. 564, 191 S. W. 2d 590, (quoting from *Verser* v. *Ford, et al.,* 37 Ark. 27) : "This is a contest for the custody and nurture of an infant girl of tender age, whose mother died at her birth, and who, from the first two or three days of her existence, has been cared for and kept by the grandparents. The father now demands the child again, having since married, and being in circumstances to provide and care for it. . . . The father has shown himself to be a moral man, with the means of discharging his parental obligation. Certainly, under the circumstances, if he had been in possession of the child, no chancellor could have found warrant in equity for taking her away to be placed under the grandmother's care. But it cannot be ignored that the case does not present that attitude. The child was placed where she is by the father's assent, and has so remained. By his assent ties have been woven between the grandmother and granddaughter, which he is under strong obligation to respect, and which he ought not wantonly and suddenly to tear asunder."

What was there said, applies with equal force here.

Finding no error, the decree is affirmed.