SMITH *v.* SMITH.

4-8929                                    223 S. W. 2d 772

Opinion delivered October 24, 1949.

*Ross Robley,* for appellant.

*Byron Bogard,* for appellee.

FRANK G. SMITH, J. This is a continuation of the case of Smith v. Smith, reported in 213 Ark. 636, 212 S. W. 2d, 10, and reference is made to that case for certain relevant and essential facts, which will not be here repeated. The opinion in that case was delivered June 14, 1948. The question there involved was that of the custody of the two children of the parties litigant, one a boy, then three years old, the other a girl, then five years old. It was the opinion of the court in that case that neither parent was the proper custodian of the children, and their custody was awarded to Mrs. Dan Beavers, the foster mother of the mother of the children.

Mrs. Beavers had no children of her own, but she took into her home a little girl, and reared her. This girl became Mrs. Smith, and is the mother of the children involved. It appears that when she was only sixteen years of age, she married Mr. Smith, who was then only seventeen. They went to Benton, where they were married February 14, 1942, without consulting Mrs. Beavers. The testimony shows that Smith, as a boy, was frequently before the Juvenile Court, and his conduct did not improve after his first marriage, and he and that wife separated July 4, 1946, and on July 25th there-

after Smith obtained a divorce. In the decree the children were placed in the custody of Mrs. Beavers, who was referred to as their grandmother, and appellant was directed to pay Mrs. Beavers $60 per month for the maintenance of the children. No part of this allowance was ever paid, and Mrs. Beavers made no effort to enforce its collection.

The chronology of events is not quite clear, but it appears Smith and his wife went to Texas where both were arrested and confined in jail. The charge against them is not stated. When Mrs. Beavers was advised of the situation she went to Texas and found Mrs. Smith in jail, and the boy in a hospital and the girl at Grayton, Texas, in the custody of a lady whose connection with the children was not shown.

The local Juvenile Court took cognizance of the case. Mrs. Beavers asked Smith if he did not want her to have charge of the children, and he said that he preferred that a Miss Ramsey have the custody of the boy. Miss Ramsey's identity and connection with the case is not shown. As we understand the record, the court ordered that the children be delivered to Mrs. Beavers and she returned with the children to her home in Little Rock.

Smith enlisted in the Army and for more than a year Mrs. Beavers heard nothing from him, and during that time he made no contribution to the support of the children. Apparently he had abandoned them. Smith does not have and never had a home of his own. Mrs. Beavers testified that except for a total period of three or four months, the children had lived in her home.

After his discharge from the Army Smith obtained a divorce as above stated, and thereafter married Edna Mae, the daughter of a Mrs. Gisler, with whom they have since made their home. Mrs. Gisler owns a hundred acre farm near Port Allen, Louisiana, but Smith and his wife are both employed in Baton Rouge, Louisiana, which city is four miles from the farm.

Smith made no contribution whatever towards the support of the children. The Juvenile Court officers in

that state finally located Smith and reported his whereabouts to the Prosecuting Attorney, who wrote him about the children. Evidently a prosecution for child abandonment was in the offing and Smith came to Little Rock. He was not prosecuted, but was directed to pay Mrs. Beavers $10 per week for the maintenance of the children, and he has since made those payments regularly. Thereafter, he instituted the suit which eventuated in the decree herein referred to in Smith v. Smith, supra. The court declined to award the custody of the children to either the father or the mother, but awarded the custody to Mrs. Beavers, the foster grandmother, with directions to Smith to pay Mrs. Beavers $60 per month for the maintenance of the children. Thirty-two days after the delivery of the opinion in that case Smith filed the present suit in which he asked the custody of the children. If that relief is granted him, he will be relieved of the necessity of making the payments to Mrs. Beavers which the court directed, but which Mrs. Beavers has never attempted to enforce. In the answer filed by Mrs. Beavers she "denied that there had been such a material change in the status of the parties since the date of the decree as would justify the change of the custody of said children." This second suit following so soon after the decree in the first one, partakes of the nature of a petition for a rehearing, although the second suit is predicated upon the allegation that there has since the first decree been such a change in the situation of the parties as to make it advisable and proper that the custody of the children be changed.

The court refused to order that change, but decreed that Smith be given the right of visitation at all reasonable times, and this appeal is from that order. The practice in cases like this, which has been frequently announced, was reaffirmed in the first decree of Smith v. Smith, supra, where it was said:

"According to our long established rule in cases of this nature: 'In determining the custody of a minor child, the welfare of the child is the supreme and controlling consideration. In the comparatively recent case of Kirby

v. Kirby, 189 Ark. 937, 75 S.W. 2d 817, we said: 'It is the well-established doctrine in this state that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity. Act 257 of 1921 (now §§ 6203-6207, Pope's Digest) . . . A decree fixing the custody of a child is, however, final on the conditions then existing and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child.' See, also, Phelps v. Phelps, 209 Ark. 44, 189 S. W. 2d 617. The party seeking a modification of a divorce decree awarding custody of a minor child assumes the burden of showing such a change in conditions as to justify such modification. (Citing Cases)' "

As has been said, Smith has never had a home of his own and the children have lived with Mrs. Beavers since they were born, except for a total period of three or four months. He proposes to place these children in the home of Mrs. Gisler, his current mother-in-law, who testified that she would like to have the children in her home, and that she could and would give them all advantages suitable to their station. She gets $250 per year rent on her farm, and drilling for oil is now in progress with fair promise of success. Smith has joined the carpenter's union and gets $14 per day when he works, in Baton Rouge, and his present wife has employment in that city. They are now buying household furniture and intend finally to acquire a home of their own, but they have not yet acquired it.

Smith's persistence manifests the intensity of his desire to have the custody of his children, and his wife testified that he was very anxious to have that custody awarded to him. But of much significance is the fact that she did not testify that she wanted the children or would welcome them into the home.

As a matter of fact, the real controversy appears to be, whether Smith shall take the children into the home of Mrs. Gisler, who has never seen them, but who testified she would be glad to have them, or whether their custody shall remain unchanged with Mrs. Beavers, their foster grandmother, who has had the care and custody of the children all their lives except a few months, and who call her Mama.

The testimony of the then Attorney General, now one of the Chancellors of the State, is that Mrs. Beavers is a woman of excellent character, and other testimony is to the effect that she has a good home, and that the children while living with her will have the proper environment. Mrs. Beavers testified that the mother of the children wanted them in her home, and with the consent of the Juvenile Court officers and the Chancellor, she allowed their mother, who is now Mrs. Spray, to have them for a short time, but she concluded that home was not a proper place for the children, and she carried them back to her own home where they now are and have since been.

We do not think the testimony shows any change in the situation since the former decree except that Smith now has a larger income, nor do we think the testimony shows that the best interests of the children require a change of custody. Smith complains that he was only allowed to see the children in Mrs. Beavers' home, which she admits, but explains by saying that Smith said if he could not have the children he would kill them and their mother too. Smith did not remember making this statement, but admitted saying that if he could not have the custody of the children he did not know what would happen.

The decree denying the change of custody of the children, from which is this appeal, but allowing the right of visitation, is affirmed, but this right of visitation is not to permit the father to remove the children from this State.