ROBERTS *v.* ROBERTS.

4-9009                                    226 S. W. 2d 579

Opinion delivered January 23, 1950.

Rehearing denied February 27, 1950.

*Pickens, Pickens & Ponder,* for appellant.

*C. M. Erwin* and *Millard Hardin,* for appellee.

ED. F. McFADDIN, Justice. This is a controversy between parents for the custody of their children. Appellee, Joe Roberts, married appellant, Thelma Holden, in Jackson County, Arkansas, in August, 1938; and these five children are of that union: Winnie May, a girl, 9

years old;[1] Billie Joe, a boy, 7 years old; Betty Jo, a girl, 5 years old; Lewis Dillard, a boy, 4 years old; and Joe D., a boy, 2 years old.

The husband and wife lived together until December 7, 1945, when Joe Roberts went to the Pacific Coast. The baby, Joe D., was born shortly thereafter. From California Joe Roberts sent back a waiver in his wife's divorce suit and also an agreement to pay her $50 per month for the support of the five children. On October 25, 1946, the Jackson Chancery Court awarded the wife a divorce; and the decree also contained this language:

"That five children were born to their union: Winnie May Roberts 7 years old, Billie Joe a boy 5 years old, Betty Jo 3 years old, Lewis Dillard 2 years old, and J. D. Roberts 3 months old, whose custody the plaintiff is awarded permanently. That for support of said children she is being paid $50 per month and the defendant is hereby assessed the sum of $50 per month, until further orders of the Court, for the support of said children."

On November 27, 1946, appellee, Joe Roberts, remarried. He is living with that wife, and no children have been born to them. Appellant, Thelma Roberts, married Riley Heisler in Jackson County, Arkansas, on January 2, 1948, and is living with him. A child of that marriage was born on October 17, 1948. Joe Roberts appears to have accumulated three or four thousand dollars in California. Until February, 1948, he paid the $50 per month for the support of his children. When he learned of Thelma Roberts' marriage to Heisler, Joe Roberts ceased sending money; but at times which suited him, he sent to the children such articles of clothing as he and his second wife selected, and also sent some fruits, nuts, and candy. A total of approximately fifty dollars in money was sent to either Thelma Roberts or the children from February, 1948, to the date of the trial below.

In May, 1948, Joe Roberts and his second wife came to Jackson County, Arkansas, and contracted to purchase

---

[1] We list the ages as shown by the testimony given in the Chancery Court in December, 1948.

a farm preparatory to cultivating the same in 1949. After so locating, Joe Roberts, without consent of Thelma Roberts or court order, took one of the children, Betty Jo, to his home. On November 22, 1948, Thelma Roberts[2] filed petition for citation for contempt against Joe Roberts because of his failure to make the regular $50 payments each month.

Joe Roberts defended the citation by testifying that the total value of the clothes, fruits, nuts, candy, etc., he had given to his children (together with a small amount of cash he had sent them) equaled or exceeded the monthly payments of $50. In addition to defending the citation for contempt, Joe Roberts petitioned the Court to award him the custody of all five of the children. The Chancery Court released Joe Roberts from contempt and awarded him the custody of all five of the children. From that decree the mother, Thelma Roberts, brings this appeal.

In his findings, the learned Chancellor emphasized the great burden resting on courts in child custody cases. We agree with him concerning the far reaching import of these cases; but under our system of jurisprudence the Chancery Court tries the case in the first instance and this Court tries it *de novo* on appeal. With all deference to the conclusions reached by the learned Chancellor, we find ourselves unable to agree with them.

I. *Support of the Children.* When the Chancery Court entered the order on October 25, 1946, directing Joe Roberts to pay $50 per month to Thelma Roberts for the support of the children, it was an order for the payment of money and not for the sending of clothes, fruits, nuts, and candy. In 34 C. J. 687, and in 49 C. J. S. 1022, in discussing the medium of payment of a judgment, this language appears:

"Except where a judgment by its own terms provides otherwise, a judgment for the payment of money can be satisfied only in money, unless the owner of the

---

[2] Although she is now Mrs. Heisler, she has been styled in this case "Thelma Roberts"; and we will continue to use that appellation.

judgment chooses to accept property, securities, or some other thing of value. . . . In order that the acceptance of something other than money may operate as a satisfaction, there must be a positive and express agreement to accept the substitute for direct payment of the judgment.''

There was no agreement of any kind by Thelma Roberts to accept the parcels sent the children as partial satisfaction of the monthly payments due for support. Such parcels were received as gifts to the children; and because of the parent-child relationship the mere acceptance cannot be used to infer an agreement. In short, the clothes, etc., sent the children cannot be claimed by Joe Roberts as credits on the support money due. The fact that the decree ordered the father to pay a certain sum to the mother each month for the support of the children did not affect the father's common-law obligation to support his children. See *McCall* v. *McCall*, 205 Ark. 1123, 172 S. W. 2d 677, and see also 27 C. J. S. 1206.

In *McCourtney* v. *McCourtney*, 205 Ark. 111, 168 S. W. 2d 200, custody of the children was awarded the mother and the father was directed to pay her a definite amount each month for the support of the children. Thereafter, the father had the custody of one child for several months and asked credit on the judgment for the expenses incurred by him for the child's upkeep during such period. We refused to allow such credit because the father had voluntarily taken the child in his own home and the expenses paid by him for the care of that child could not be claimed as a partial payment on the judgment for support. The rationale of that holding is applicable to the case at bar.

The learned Chancellor said that Joe Roberts, in sending the parcels, probably thought he was sending the equivalent of the money judgment; and for that reason the Chancellor concluded that Joe Roberts was not in contempt. The Chancellor observed:

''Of course, he should have come in and asked the permission of the court instead of taking his own 'shot'

at it, and while he sent them plenty of clothes and fruit and candy, they did have to be fed, and the mother and her father and her husband have had to feed them.''

So the fact remains that Joe Roberts owes the support money from February, 1948, less any sums he sent Thelma Roberts[3] and less the $100 the Chancellor ordered him to pay to avoid contempt. On remand the Chancery Court will (a) determine the balance due on the support money, as herein basically adjudged, and (b) direct Joe Roberts to pay it; and the matter of contempt may then be pursued in the event of failure of payment.

II. *Changed Conditions.* The order of October 25, 1946, awarded the custody of the children to the mother, Thelma Roberts; and in the present case the burden is on Joe Roberts to show that such a change in conditions has occurred as to make a change of custody to be for the best interests of the children. In *Thompson v. Thompson,* 213 Ark. 595, 212 S. W. 2d 8, the late and beloved Mr. Justice ROBINS said:

''While any order as to custody of a child is subject to future modification by the court making it, the rule, uniformly adhered to by us, is that before such modification may be made it must be shown that, after the making of the original order, there has been such a change in the situation as to require, in the interest of the minor, the change to be made, or it must be shown that material facts affecting the welfare of the child were unknown to the court when the first order was made. *Myers v. Myers,* 207 Ark. 169, 179 S. W. 2d 865; *West v. Griffin,* 207 Ark. 367, 180 S. W. 2d 839; *Miller v. Miller,* 208 Ark. 1058, 189 S. W. 2d 371; *Phelps v. Phelps,* 209 Ark. 44, 189 S. W. 2d 617; *Graves v. French,* 209 Ark. 564, 191 S. W. 2d 590.''

In *Blake v. Smith,* 209 Ark. 304, 190 S. W. 2d 455, we said:

''The party seeking a modification of a divorce decree awarding custody of a minor child assumes the

---

[3] It is uncertain from the record how much, if any, he paid to Thelma Roberts. The Chancery Court can so determine on remand.

burden of showing such a change in conditions as to justify such modification. *Kirby* v. *Kirby, supra,*[4] and *Seigfried* v. *Seigfried,* (Mo. App.), 187 S. W. 2d 768.''

In the light of these holdings, the question now before us becomes: What changed circumstances are shown in this case to justify a holding that a change of custody is for the best interests of the children? The learned Chancellor said:

''There isn't any question in my mind about the mother of these children being a good woman, nor is there any question about her present husband being a good man; and there is no question but that they have looked after these children as well as they could and as well as most anybody else would in the same circumstances. There is no question in my mind about them morally—any of them—and there is no question about any of that at all.''

Thus, the morality and good character of the mother and stepfather are settled. The mother had been sick prior to the trial: she had influenza; but there is no evidence that her health has been permanently impaired.

One of the main reasons urged for the change in custody was that Joe Roberts had accumulated some money in California and returned to Arkansas and used his money to make a part payment on a farm; and thus had a larger and more commodious home than that of the mother. It occurs to us that if Joe Roberts had regularly paid the $50 per month for the support of the children the mother would have been financially able to afford them better care, and Joe Roberts would not have had so much money to use as down payment for the farm. The financial affluence of a father is a poor substitute for mother love.[5]

Without prolonging this opinion by discussing each item suggested as a change in conditions, we conclude

---

[4] 189 Ark. 937, 75 S. W. 2d 817.

[5] *Cole* v. *Heritage,* 206 Ark. 986, 178 S. W. 2d 61, was a child custody case between grandparents, but we there indicated that material abundance of one party was not sufficient to cause a change of custody.

that the evidence is insufficient to support the order here made which took children of tender years from the mother and gave them to the father. The polestar in a child custody case is the determination of what is for the best interest of the child;[6] and in following that course, we have always been reluctant to deprive a child of tender years of the care and affection of his mother.[7] Particularly is this true in a case, such as the one at bar, in which the mother has had continuous care of these children since their birth and in which she and her present husband have been found by the Chancellor to be good people who have "looked after these children as well as they could and as well as most anybody else would in the same circumstances."

The decree awarding the custody of the children to the father is therefore reversed; and the custody issue is remanded to the Chancery Court with directions (a) to award the custody of the children to the mother, with the father to have the right to visitation, and (b) to require the father to make regular payments for the support of the children.

III. *Ex Parte Statement.* For guidance in future cases, we deem it proper to point out the correctness of the ruling of the Chancery Court in this case excluding what purported to be a report submitted by a welfare worker. At the request of some undisclosed person the County Welfare Worker made an investigation and report concerning living conditions, etc., of Joe Roberts and Thelma Roberts. A four-page, single-spaced, unsigned, typewritten report was offered in evidence by Joe Roberts; and the Chancery Court excluded it. The report was not competent. The welfare worker who prepared the report did not testify. It comes into this record as an *ex parte* statement; and learned counsel for appellee, in arguing the case before this Court, frankly and candidly conceded that the trial court was correct in excluding the report. In *Trannum* v. *George,* 211 Ark. 665, 201 S. W. 2d 1015, we pointed out that a report,

---

[6] *Venegas* v. *Mascorro, ante,* p. 173, 224 S. W. 2d 532.

[7] *Reynolds* v. *Tassin,* 209 Ark. 890, 192 S. W. 2d 984.

just such as the one here, was "hearsay" and not admissible in evidence. We adhere to that holding.

The judgment of the Chancery Court is reversed and the cause is remanded with directions to the Chancery Court to enter a decree in accordance with this opinion.

LEFLAR, J., dissenting. This dissent relates only to that part of the majority opinion which reverses the Chancellor's award of custody of the children to their father.

The majority opinion states that "the polestar in a child custody case is the determination of what is for the best interest of the child," a principle borne out by many wise decisions of this court in days gone by. Failure to apply the principle here is the reason for this dissent.

The effort to decide who is at fault for poor care of children is a hopeless task when illness and poverty share the causal role. Thelma Heisler, mother of the children here, undoubtedly did the best she could. Her new husband was an unskilled day laborer, sometimes employed, sometimes not. His wages were low. A sixth baby was born to the 27-year-old mother after she remarried; she has been sick since the sixth baby came; her cousin testified that the work had been "too much for her" since then; after that she couldn't keep the house or the children clean and do all the other work that had to be done. The new husband's mother lived with them, making nine in the family. The house in which they lived was a crude three-room structure. One of the rooms, the kitchen, leaked so badly they couldn't use it, so "we have the kitchen in the front room now." The third room was the bedroom, and was upstairs. It had three beds where the nine of them slept, "but we moved downstairs while the baby is so little." "We didn't have a garden this year."

The majority opinion mentions the fact that appellee in May, 1948, "without consent of Thelma (appellant) or court order took one of the children, Betty Jo, to his home." The evidence indicates this child was sick when the father took her. Concerning this Thelma testified: "I have not been well, and I couldn't get up to dress her

or any of them." The father testified that Thelma agreed that he might take the child to the doctor, and then "she had to have certain treatment regularly, and I knew we had more time to get her well and take care of her than they did." As to the health of the other children Thelma's new husband testified that they had bad colds and "the baby had them sores on him like Mr. Roberts said."

With this must be contrasted the home which appellee father has to offer his children. With the $3,600 savings which he accumulated in California after he and Thelma were divorced in 1946 he paid $1,200 down on a $5,000 farm and is arranging a long-time F.H.A. loan for the balance; he has bought a tractor and other equipment, cows, chickens and hogs for the farm; he has bought good furniture for the house. The farmhouse has electricity; there are three bedrooms; it will make a good home for children to grow up in. It is near a church and a school. Ninety acres of the 192-acre farm are in cultivation, and appellee is an experienced farmer, hardworking and ambitious.

Appellee and his new wife are childless. His love for the children cannot be questioned, any more than can their mother's. His wife has given much tangible evidence of genuine regard for the children, and hopes to treat them as her own.

Technically the case should be looked at as of the date of trial, but it is a fact, admitted in oral argument here, that since the Chancellor's decree was rendered in December, 1948, the children have been living with their father, and for over a year they have grown accustomed to the standards of his home. The majority not only denies them those standards; it returns them to the home of the mother and step-father after they have come to know a better life.

The Chancellor heard the evidence and saw the parties and witnesses in this case. He knew the facts better than the cold record can show them to this court. He put the welfare of the children ahead of parental fault and concluded that "the children will be better off . . . and grow up to make better citizens if the Court allows the

father to take them and raise them." This court should reverse the Chancellor only if the weight of the evidence is contrary to his findings. It is my opinion that the evidence justified his finding of changed conditions, and that his decree should be affirmed.

GEORGE ROSE SMITH and DUNAWAY, JJ., join in this dissent.