HYDRICK *v.* HYDRICK.

5-583          275 S. W. 2d 878

Opinion delivered February 28, 1955.

[Rehearing denied March 28, 1955.]

*Carroll C. Cannon,* for appellant.

*James Robertson,* for appellee.

ROBINSON, J. This is a contest over the custody of three minor children, aged 2, 5, and 6. Appellant Lois

Hydrick, the mother, and appellee George L. Hydrick, the father, were married May 18, 1947, and separated in January, 1952. They went back together March 12, 1952, and separated again on March 19, 1952. At that time Lois left her husband George and the children and went to Memphis where she secured employment.

On March 17, 1953, Lois filed suit against George seeking a divorce and custody of the children. Lois alleged as grounds for divorce that George, while drinking to excess, had threatened her with a shotgun and had run her away from the home. George answered denying the allegations of the complaint and filed a cross complaint asking for a divorce and alleging that Lois was unfaithful, that she fussed and nagged and was not a proper person for the custody of the children, and also alleging desertion for a period of one year and asking that he be given custody of the children. Upon a trial the Chancellor dismissed Lois' complaint, granted George a divorce on August 5, 1953, on the ground of desertion, and awarded the custody of the children to him with the right of Lois to see the children and have them with her on Sundays. The children had been in the custody of George from the time of the separation except for a few weeks.

On the 21st day of December, 1953, Lois filed a petition alleging changed conditions and asking that she be granted the custody of the children. George responded denying changed conditions and alleging that Lois was guilty of immoral conduct and was not a fit and proper person to have custody of the children. Upon a hearing, the court denied the petition and from such ruling Lois has appealed.

We have reached the conclusion that the evidence justifies awarding the custody of the children to Lois. It appears that since the custody of the children was first given to George by the court, he has demonstrated that he is not the proper person to have their custody and that the children will be much better situated if they are with their mother. The welfare of the children is

714

controlling. *McCourtney* v. *McCourtney*, 205 Ark. 111, 168 S. W. 2d 200; *Miller* v. *Miller*, 208 Ark. 1058, 189 S. W. 2d 371; *Blake* v. *Smith*, 209 Ark. 304, 190 S. W. 2d 455.

In the first place George is a well driller; for long periods of time he is at home very little and does not have much opportunity to supervise the children. He has living with him a Mr. and Mrs. Fahr, a somewhat elderly couple whom he pays $30 per month and their board and room to look after the children. They live in a four-room house with two bedrooms, and at least a portion of the time this house is occupied by ten people, who sleep in the two bedrooms. One of the persons who stay there part of the time is a man 40 years of age who has been suspected of raping a nine-year-old girl and has been in the State Hospital; when at George's home this man sleeps in the same room with the little six-year-old girl.

It has developed since the first trial that George has an uncontrollable temper and what he will do next is unpredictable. Pursuant to the decree of the court in the first instance, a piece of real estate belonging to the parties constituting an estate by the entirety was being sold at public sale; George apparently became incensed because Lois had raised his bid $250, rushed to his pickup truck where he got a pistol, and started back to the place of the sale with the avowed intention of settling the matter then and there. It appears that he was restrained by his lawyer and a bystander; it is not clear as to just whom he intended to kill, but it is perfectly apparent that he intended to kill somebody. Ordinarily people do not carry pistols for ornamental purposes; he brought the pistol to the sale in his truck in the first place with the thought in mind of using it. It does not appear that he was on a journey beyond the circle of his friends or that anyone had made threats against him that would cause him to be apprehensive about danger to himself. His action in running to his truck and getting the pistol can only be explained by his temperament being such that he will go into a tantrum

without any provocation whatever. The attorney representing Lois in this appeal is not the lawyer who represented her at the trial, the first one having withdrawn from the case with the explanation that he was in fear of his life, afraid that appellee would kill him if he stayed in the case. Also the lawyer who represented appellee at the first trial withdrew from the case. The evidence is convincing that appellee fired a shotgun and then pointed the loaded gun at Lois, thereby making her confess to acts of immorality of which she is not guilty. Appellee put his wife and his brother out of a truck on the Mississippi River bridge at Memphis in the nighttime because he says that they were fussing and annoying him. He has not given the children presents sent to them by their mother, and on one occasion he seriously threatened to commit suicide. He went to Lois' apartment without her permission and obtained letters he used at the child custody hearing. He has prevented the mother from seeing her children on Sunday in violation of the court's order, and his conduct and threats have caused her to be afraid to visit the children.

He attempts to keep custody of the children mainly by showing that the mother is a bad woman and unfit to have custody of them. In an effort to prove his point in this respect, he produced his own brother as a witness, who testified to circumstances calculated to establish an inference of immoral conduct on the part of Lois, but in the same breath the brother states that he unsuccessfully attempted to have improper relations with her. George produced the brother's wife as a witness, who shamelessly testified to misconduct on her part while in the company of Lois, thereby attempting to establish that Lois was also guilty of the same kind of misconduct. Appellee further attempted to show by a friend that such friend had double-dated with Lois under circumstances that would lead to an inference of immorality on the part of Lois. This witness was impeached by a state patrolman who happened to be in the courtroom and who knew that the witness' testimony could not be true, and volunteered to so testify. The brother and sister-in-

law's own testimony, when viewed in the light of admissions of improper behavior on their part, does not carry much weight.

On the other hand, at the request of the Chancellor, the Juvenile Court of the city of Memphis investigated the appellant, and the report prepared by John O. Beebe, probation officer, speaks in the very best terms of appellant. Mrs. A. B. Schneller, probation officer in the Memphis Juvenile Court, testified that on the complaint of appellee she made an investigation of appellant. Mrs. Schneller has been engaged in all sorts of investigations as to the fitness of homes and individuals for 25 years; she has been with the city of Memphis about 5 years; prior to that time she was with the State Department of South Dakota where she did social work; and she is a licensed attorney. She made a thorough investigation of appellant and her home, and found "a very satisfactory situation." She found nothing derogatory whatever and testified that in her opinion Mrs. Hydrick is a satisfactory and proper person for the custody of her three children. Mrs. Hydrick works in one of the Easy-Way Stores in Memphis, and her employer reported to the investigators that she was one of his best employees and her work was very satisfactory. Mr. E. D. Brandon testified that he is the owner of the apartment where Mrs. Hydrick lives with her mother and father; he testified that Mrs. Hydrick is "tops," that he had made some inquiry about her and found her to be "okay 100%"; her reputation is good; in fact she looks after the renting of the apartment house for Mr. Brandon.

The testimony of Mrs. Hydrick's father and mother with whom she lives, the report of Mr. Beebe of the juvenile court in Memphis, the testimony of Mrs. Schneller, probation officer of Memphis, and the testimony of Mrs. Hydrick herself, by far outweighs the testimony produced by the appellee Hydrick. Mrs. Hydrick has a good home with her parents in Memphis; they live in a nice neighborhood; schools are close by, and Mrs. Hydrick's parents are able to help her look after the children.

Appellee should be required to support the children. The record does not reveal just what his financial condition is; he testified that he is in the business of drilling wells for rice farms and that he gets from $600 to $7,000 fifteen to twenty times each year; but he refused to tell the net amount he makes. If he is truthful with regard to getting from $600 to $7,000 fifteen to twenty times per year, he probably has a net income of $10,000 or better. On being asked on cross-examination how much income tax he paid last year, he replied: "That is none of your business." The fact that he refused to divulge his net income would indicate that he made such a large amount he wants to conceal it in order to pay as little as possible for the upkeep of the children. He stated that he pays Mr. and Mrs. Fahr $30 per month to help with the children in addition to boarding them, and that his grocery bill the previous year amounted to over $3,000. This would be in excess of $250 per month grocery bill. With Lois having custody of the children, it would no longer be necessary for him to buy groceries for anyone except himself, as he will not have the children and it will not be necessary for him to have Mr. and Mrs. Fahr.

Although Mrs. Hydrick did not ask for an attorney's fee on the change in custody feature of the case, the testimony in the divorce suit is made a part of the record and it shows that she cannot afford to pay an attorney. If she is compelled to pay her lawyer from her meager earnings, it will be with money she would otherwise probably use for the benefit of the children. Therefore the petition will be considered as amended in that respect. The court may in its discretion allow an attorney's fee in a child custody case after the parties have been divorced. In *Vilas* v. *Vilas,* 184 Ark. 352, 42 S. W. 2d 379, the court cited *Spratt* v. *Spratt,* 151 Minn. 458, 187 N. W. 227, and said: "The opinion in that case recognized the fact that there was a division in the authorities, a number of which were there cited, but the conclusion was there announced that the chancellor had the power to make an allowance to the wife for her counsel

fees in a proceeding for a modification of the judgment respecting the custody of the children, although a decree for divorce had been previously granted. Accepting this view, the majority are of the opinion that an additional fee . . . should be allowed.''

The cause is reversed with directions to award appellant custody of the children with reasonable visitation privileges to the appellee, a reasonable sum for their maintenance in keeping with the financial position of the parties, and a reasonable attorney's fee.

Justices McFADDIN and MILLWEE dissent.